JUDGE COFER
delivered the opinion op the court.
Felix Mercer died in May, 1876, domiciled in Marion County. He was never married, but was the father of four natural children whom he recognized as his, three of whom, with their mother, resided with him on his farm near Lebanon. His eldest child, by another mother, was married in 1858 contrary to his wishes, and an estrangement existed between them for some years, but he had become reconciled to her long before his death.
Claiming that he had left a holograph will, but being unable to produce it, his married daughter Mrs. Mackin, and the mother of the three younger children, for herself and for them, presented to the county court a writing purporting to be the substance of the last will and testament of Mercer, and moved to have it probated. No evidence was offered, and the writing was rejected, and the propounders appealed to the circuit court, where the supposed will was established, and from that judgment Mercer’s heirs-at-law prosecute this appeal.
The evidence relied upon to establish the will is in substance as follows:
That Mercer was warmly attached to his children, and unfriendly to many, if not all, of his collateral kindred; that he often declared that they should not have any part of his estate; that he intended it for his children; that he knew if he died without a will they would not get any part of it; that he was a man of more than ordinary mind, and was capable of writing a will; that before the three younger children were born he made a will, by which he made liberal provision for Mrs. Mackin, then a child; that after one or more of the younger children were born, he said circumstances had changed, and he had made another will; that he said he' did not intend to live a day without a will; that he always kept a will by him; that his children were provided *437 for, and would be educated whether he lived until it was done or not. Some of these declarations were proved to have been often repeated, and two witnesses, Mrs. Mackin and the mother of the younger children, swore that he told them he had made a will, and had written it himself, and the latter swore that on the day of Mercer’s death one of his nephews, an heir-at-law, was at his house and in the room with bim where he kept his papers, and that she saw him at the desk where they were kept, and that he put something under his coat, and afterward at the dinner-table acted as if concealing something under his coat. She also swore that one of Mercer’s pocket-books was missing; but in that, as well as in other things, she was contradicted by evidence of inconsistent declarations out of court as well as by the positive denial of the nephew whom she implicated.
There was other evidence calculated in some degree to strengthen and confirm that we have stated, but as we do not find it necessary to pass upon any question of fact proper for the consideration of a jury, and what we have stated is sufficient to present the questions of law involved, we need not extend this opinion by any more detailed statement of the evidence.
The will, as probated, gives to Mrs. Mackin for life the sum of $10,000; remainder to her children; to two of the three younger children a farm, and to the other the residue of the estate, and provides that their mother shall have a right to live on the farm and occupy it as a home to raise and take care of the children.
The first question presented is whether these two devisees were competent witnesses for the propounders.
The provisions of the Code relating to the competency of witnesses do not “ affect the competency of attesting witnesses of instruments which are by law required to be attested.” (Subsec. 11, sec. 606, Bullitt’s Code.)
*438 This being a holograph will, the law does not require it to be attested, but the- supposed, will not having been produced, it is argued, with great plausibility, that these witnesses, proving, as they do, the declarations of the testator that he had made a will, had written it himself, thereby dispensing with the formal attestation of witnesses on the will itself, stand, as respects their competency, in the attitude of attesting witnesses, and occupy the same position as if they had attested the execution of a will not written by the testator, by subscribing their names thereon as witnesses.
But if this were conceded, we think it would not affect our decision. Section 13, chapter 113, General Statutes, contains this language: “And if a will is attested by a person to whom, or to whose wife or husband, any beneficial interest in any estate is thereby devised or bequeathed, if the will may not be otherwise proved, such person shall be deemed a competent witness; but such devise or bequest shall be void; except that, if such witness would be entitled to any share of the estate of the testator in case the will were not established, so much of his share shall be saved to him as shall not exceed the value of what is so devised or bequeathed.”
Under this provision even an heir - at - law is a competent witness to prove the execution of a will if it may not be otherwise proved. Whether any and what' foundation ought ordinarily to be laid to show that the will can not be otherwise proved, we need not decide, as we think the circumstances of this case are quite sufficient to show that no other evidence of the execution of the will was known to the propounders. Perhaps, under ordinary circumstances, the propounders ought to make and file an affidavit that the execution of the will can not be otherwise proved unless that fact appears from the will itself.
Under the statute supra a devisee who is an attesting witness, and as such proves the execution of the will, thereby *439 renders the devise to himself void, but if he be an heir-at-law he will take his share as such not to exceed the value of the devise to him. These devisees were therefore competent witnesses to prove the execution of the will.
. But whether their testimony was competent is a wholly different question. They did not testify that Felix Mercer made a holograph will. They only testified that he said he had made such a will, and it was only by evidence given by these same witnesses of his oral declarations that the contents of the supposed will were ascertained.
The statute provides that no will shall be valid unless in writing, with the name of the testator subscribed thereto by himself, or by some other person in his presence, and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator.
The primary evidence of the existence of a lost will and of its contents is the will itself, and the primary evidence that it is a holograph will is the testimony of persons acquainted with the hand-write of the testator who, upon inspecting it, testify that he wrote it.
Evidence of the declarations of the testator that he had written a will, and as to its contents is, if competent, only secondary, and, according to a well-settled rule of the law of evidence, is not admissible until satisfactory evidence of the loss or destruction of the will be given. No such evidence was offered in this case. The devisees who were sworn as witnesses, and one of whom resided in the house with the testator for years before and at the time of his death, did not, even on the witness-stand, avow their ignorance of the whereabouts of the will, or prove that it was lost.
Moreover, assuming that such a will had once existed, the *440 law, from the fact that it could not be produced if standing alone, presumes its revocation, unless its loss was accounted for, which was not even attempted, except by the statement of the witness that she saw a nephew of Mercer at the desk where he kept his papers, and that she saw the nephew concealing something under his coat, and her statement about a missing pocket-book, and the statement of another witness that shortly before his death Mercer had a pocket-book that seems not to have been seen among his effects after his death. Mercer was in the room when the witness says she saw the nephew hide something under his coat, and was in a condition to have observed the taking of any thing from the desk; went out with him to dinner immediately after; and there was a total absence of proof that the will was ever in that desk except the fact that papers were kept in it. Besides, the evidence showed that the nephew could not read, and he swore that he did not take any thing from the desk.
But waiving this question, the evidence of the declarations of Mercer was inadmissible upon other and more substantial grounds. He declared he had made a will — had written it himself. This could in no event be sufficient. In order that it might be a valid will, he must not only have written it, but must have subscribed his name to it at its conclusion. (Sec. 5, chap. 113, and sec. 26, chap. 31, Gen. Stat.)
There is no evidence that he said he had subscribed it with his name, or that he . knew such subscription was necessary to its validity.
What he said was therefore but an expression of his opinion as to what was necessary to constitute a valid will, in which he may have been wholly mistaken.
But had he declared that he wrote and signed it with his own hand, evidence of such declarations would not be sufficient to authorize the probating of the will.
Counsel for the appellee contend with much earnestness *441 that evidence of these declarations is admissible against the heirs - at - law of Mercer, because of the privity between him and them.
If Mercer had declared that he had sold his land, or that he held it as tenant, or had but a life-estate in it, or that he owed a debt to A, his declarations would have been competent evidence, in a proper case, against his representatives. But such declarations would not constitute the foundation of any right in the claimant; they would be evidence and only evidence of a right pre-existing, and wholly independent of the declarations. They would be directly against his own interest, and, being against his interest, it is so extremely improbable that he would have made them if untrue, that they would be admissible against him or his representatives.
“The regard which men usually pay to their own interests is deemed a sufficient security, both that the declarations were not made under a mistake of fact, or want of information on the part of the declai’ant, if he had the requisite means of knowledge, and that the matter declared is true.” (1 Greenleaf’s Evidence, sec. 148.)
But it is essential that such declarations, when made, should have been self-deserving, i. e. that they should have been, when made, against the pecuniary or proprietary interests of the declarant. (Wharton on Evidence, secs. 228, 337, 1168.)
Declarations by Mercer that he had made a will were not in any sense against his interests, and consequently they do not fall within the reason of the rule under which this class of hearsay is admitted in evidence. That regard which men generally have for their own interests is the principal foundation upon which the rule admitting declaration against interest is based. Experience has taught us that when one makes a declaration in disparagement of his own rights or interests it is generally true, and because it is so the law has deemed, it safe to admit evidence of such declarations against him and *442 those claiming through or under him. But the rule is limited to declarations prejudicial to his pecuniary or proprietary interests. (Wharton on Ev., sec. 228.)
Declarations that the declarant has made a will not only want that guaranty for their truth on which the rule admitting evidence of declarations is based, but, of all kinds of declarations relating to important subjects, none are more unreliable than declarations concerning wills.
In discussing the rules of law in respect to evidence of the parol declarations of testators to modify wills, Mr. Wharton well expresses what the experience of every one who has had much opportunity of observing can not but recognize as sustained by his own observations; and while the question he is discussing is not the same as that now under consideration, his remarks are equally applicable here.
He says: “ Experience tells us that few kinds of talk are more unreliable than talk about wills. Not only are expressions of intention, when uttered (and ordinarily the very fact of their utterance is a presumption against them), uttered with the consciousness that they may be at any time recalled; but, as we have already noticed, it is a common maxim that people who talk about their wills very rarely make wills in conformity with their talk. What a man puts down in a solemn testamentary instrument is naturally very different from what he might say when disposed either to mystify those whom he might consider impertinent inquirers, or to please those whom, for the moment, he might particularly desire to please. . . . Nor are we to forget, in considering this question, the character of the medium through-which these declarations must pass. The testator’s lips are sealed in death, and evidence of his intentions, thus reproduced, comes to us without that sanction which is given when there is power of explanation in the person whose remarks are reported.” (Wharton’s Ev., sec. 992.)
*443 Mercer had, notwithstanding his repeated declarations that he had made a will, and that he intended his children to have his property, a right to destroy his will, if he had in fact made one, and that no will was found raises a presumption that he did destroy it. But he is not here to explain; and to allow the alleged will to be probated on no other evidence than of his declarations would be against the analogies of the law, and would make a new exception to the general rule which excludes mere hearsay from the arena of legal evidence.
True, the circumstances of this particular ease appeal most strongly to the sympathies of the court, and we do not hesitate to say that there is hardly room to doubt, when we consider all that was allowed to go to the jury as evidence, that Felix Mercer made a will, and attempted to dispose of his property to his children.
He is shown to have had for them the natural affection of a father, and he certainly knew they would not get his estate unless he made a will. He did not desire that his collateral kindred should inherit what he possessed. He was influenced by two of the strongest passions of human nature — love and animosity. We are not only to decide whether evidence of his declarations will, unaided, authorize the establishment of what we suppose was his will, but we are to lay down a rule, to establish a precedent for the decision of other eases to come after this, and must bear in mind that hard cases make shipwreck of the law, and that the decision, we are asked to make, is not only without precedent and against the reason of the rule invoked by appellees’ counsel for our guidance, but would open a wide door for foisting upon the country the grossest frauds, through perjuries, which it would be impossible to detect or punish.
The legislature, with the experience of the past in view, has seen proper to require the execution of wills to be evidenced in a manner to put every proper obstacle in the way *444 of disturbing the regular course of descent by tbe forgery of wills. The provisions of the statute were framed to guard, as far as human foresight can, against abuse, and these provisions should not be frittered away by the courts. It is far better that an occasional hardship should be borne by those upon whom it may fall than that the right to estates left by their owners to pass under the law of descent should be exposed to defeat by allowing the declarations of deceased persons, too often carelessly made or afterward recanted, and so liable to be misunderstood or perverted, to take the place of wills required, for security against fraud, to be in writing.
Even courts of equity, always ready to grant relief against fraud or mistake when not incompatible with higher considerations, have for a great while constantly refused to reform or correct wills, deeming it better to allow an occasional wrong to go unredressed than to attempt to correct it, however clearly the mistake or fraud might be proved.
We have not found, nor have we been referred to, any case directly in point upon the question we are considering, but there are cases sufficiently analogous to control the decision independently of mere abstract reasoning or considerations of public policy.
In re The Goods of Ripley, 4 Jur., N. S. 342, was an application to probate a copy of an alleged will. There was no evidence of the due execution, of the will except the written declaration of the testator in a letter or letters to his brother; and the court, Sir Cresswell Cresswell, said : “ I have great difficulty as to the execution of these papers. There is no doubt as to their contents; the only proof of the execution is the statement of the deceased himself. Is there any precedent of granting probate without proof of due execution ?” Being answered by counsel that there was none, the court, after stating the evidence, said: “ Upon principle, it seems to me that there being no proof of the factum of the will except the declaration *445 of the supposed testator, the prayer must be refused. But as the circumstances of the case made me anxious to grant probate if possible, I have caused inquiries to be made whether any precedent could be found in the registry, but no such is forthcoming. There is a case at common law (Doe d. Shallcross v. Palmer, 16 Q. B. 747; 15 Jur. 836) which inclines the other way. The court there refused to admit declarations of the testator made after the execution of the will, as to an interlineation it contained; a fortiori such declarations could not be received as to the whole will.”
In the recent case of Sugden v. Lord St. Leonard, 1 vol. Prob. Div. Law Reports, 227, the case supra was referred to and recognized as establishing the correct rule on the subject. The court said, “ the exercise of the testamentary power, being conditional on the observance of the formalities prescribed by the statute, a man can not, by his mere assertion, establish that he has fulfilled the conditions necessary to the exercise of the right.”
The right to make a will, whether conferred by statute or-existing at common law, is regulated by statute as to the mode of its exercise, and unless exercised according to the mode prescribed, can not be exercised at all; and to allow the mere declaration of the testator, to prove complianeé with the statutory conditions, would be to substitute such declarations for that which the statute requires shall be in writing.
In the case of Chisholm’s will, 7 B. Mon. 408, one of the questions was whether the contents of a lost will were proved. A witness stated that he attested the will, and that the testator either read it to him or stated its contents.
The witness stated the contents of the will as thus read or stated to him, and was corroborated by other witnesses to whom the testator had stated one of the items in his will. Referring to the testimony of this witness, and those by whom he was corroborated, the court said:
*446 “ But is not all this testimony of precisely the same grade and efficacy, all resting upon the mere statements or representations of Chisholm himself? And are these representations, if made to a hundred witnesses, and especially to witnesses who had no interest in the subject, and no right to require the information from him, sufficient of themselves to establish the contents of the will in a court of probate? If the due execution of the will is to be proved by the acknowledgment of the decedent, without an exhibition of his signature, that a certain paper is his will, and if the contents of the paper, in case of its absence, are to be proved by evidence of his own statements of what was in it, the statutory requisitions of writing, and signature, and attestation by subscribing witnesses, would seem to be of little value, since the whole proof of the will would in effect be made by evidence of the mere statements of the decedent himself. There is little difference between setting up a lost or absent will upon the testimony of witnesses who say they subscribed a paper upon the acknowledgment of the decedent that it was his will, without seeing his signature, or reading or perhaps seeing what was written, with additional proof by themselves or others, that the decedent said his will contained such provisions, and setting it up on no other proof than that of divers credible witnesses, that they had heard the decedent say he had a will in his desk containing such and such devises.”
Evidence of the parol declarations of a testator to rebut the presumption of revocation arising from the absence of a will after the death of the testator, which was last seen in his possession, though rejected in some of the states of the Union, is admitted here and in England, and in Sugdon v. Lord St. Leonard, supra, was admitted in corroboration of the testimony of a witness who had read the will and testified as to its contents. The law does not require the presence of witnesses to the revocation of a will, or that it should be evidenced *447 by writing, but permits it by burning, cutting, or tearing, with intention to revoke, and when a will shown to have existed and which, when last seen, was in the custody of the testator, is not found on due search after his death, it is presumed to have been revoked, and evidence of his parol declarations that it was lost is admissible in corroboration of other evidence conducing to rebut that presumption (Steele v. Price, 5 B. Mon. 63; Chisholm v. Ben, 7 ib. 408); and evidence of declarations of the testator as to the contents of his will are only admissible in corroboration of other evidence, and, when there is no other evidence, his declarations should be rejected.
It was said, in the latter case, that under the various exigencies arising from casualty or fraud, a lower grade of evidence than would be afforded by the production of the will itself has been necessarily admitted, and that probably there might be circumstances which would authorize the establishment of a will upon the mere weight of probabilities as to its execution and contents, but that still “the spirit of the statute, and the preservation of those barriers which it intends to erect against the' fraudulent imposition of mere parol wills, as well as the suppression of valid wills in writing, seem to determine in case of the mere loss of a will against the sufficiency of parol evidence of its contents, not derived from an inspection of the written will by the witness,” etc...... “ These considerations disallow in the case supposed the sufficiency of the testator’s mere declarations, either as to his general intentions or as to the particular import of his will.”
If the contents of a will may not be proved alone by evidence of the declarations of the testator, then surely it requires no argument to prove that both the due execution and contents can not be proved by such evidence.
But it is contended that the will of Mercer has been shown to have been fraudulently suppressed, and therefore this is a case which, in the language of the court, in the case of Chis *448 holm’s will, would authorize the establishment of the will upon the mere weight of probabilities as to its execution and contents. Without now saying more, we remark that the evidence of fraudulent suppression of Mercer’s will falls very far below the standard erected by the court in that and other cases for the admission of a will to probate upon a mere preponderance of probabilities, and that there is in fact no legal evidence that such a will as that sought to be established ever existed, and consequently there can be no evidence of its fraudulent abstraction or suppression.
The court said, “And if such declarations ... be . allowed, in case of the fraudulent suppression of the will, to be sufficient proof of its contents, the same considerations seem to require that the fact of fraudulent suppression, which is to authorize such an extraordinary relaxation of the rules of evidence, should itself be established beyond a reasonable doubt.”
The evidence relied upon to show the fraudulent suppression of Mercer’s will not only failed to establish the fact beyond a reasonable doubt, but the preponderance of the evidence on that subject was greatly against the propounders, to say nothing of the legal presumption of innocence, which should have due weight in such a case.
As therefore no case was made out for the admission of evidence of the declarations of Mercer, on the ground that his will had been fraudulently suppressed, and as there was no legal evidence of its execution or contents to be corroborated by evidence of his declarations, the circuit court should have decided as matter of law that the evidence was insufficient, and have directed the jury to find that no part of the writing before them was the will of Felix Mercer, and have affirmed the judgment of the county court.
Judgment reversed, and cause remanded with directions to affirm the judgment of the county court.