CASE 70—ACTION CONTESTING WILL—MAY 18.

# Muller, &c., v. Muller, &c.

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

WILL OF BARBARA MULLER, DECEASED, CONTESTED BY JOHN P. MULLER AND OTHERS—JUDGMENT FOR CONTESTANTS—PROPOUNDERS APPEAL. REVERSED.

REVOCATION OF WILL—LOSS OF SUBSEQUENT WILL—BURDEN ON CONTESTANTS TO SHOW INCONSISTENCY.

Held:  1. Under Kentucky Statutes, sec. 4833, providing that "no will or codicil, or any part thereof, shall be revoked unless by the marriage of the testator, or by a subsequent will or codicil or by some writing declaring an intention to revoke the same, executed in the manner in which a will is required to be executed," where a will is contested on the ground that it was revoked by a subsequent will, which has been lost, the burden is on the contestants to show the due and proper execution of the subsequent will, and also that it expressly revoked the will in contest, or was substantially inconsistent therewith.

2. After proof that the subsequent will is lost, its contents may be established by parol testimony, and the declarations of the testator are competent to show that it was inconsistent with the will in contest.

R. T. LIGHTFOOT AND T. L. PRICE FOR APPELLANTS.

1. A subsequent will does not revoke a former one unless it contains a revocatory clause or makes an inconsistent disposition of property devised in the former one. Schouler on Wills, secs. 407, 408, 412.

2 The mere execution of a subsequent will which is lost, and its
contents can not be proven, is not sufficient to revoke a former
one that is retained uncancelled. Woerner on Am. Law of Ad-
ministration, secs. 50 and 51; Williams' Executor, 162; Culto v.
Gilbert, 9 Mo. P. C., 131; Williams' Executor, 163-4; 1 Jarman
on Wills; Nelson v. McGiffert, 47 Am. Dec., 173 and authorities
therein cited; Peak's Appeal, 50 Conn., 562; Seymour v. Nors-
worthy, Hard 374; Austin v. Oaks, 117 N. Y., 577; 117 N. Y.,
606; 120 N. Y., 366; 64 Md., 306; 28 Penn. St., 23; 16 Pa. St.,
232; (Damn W. S., 226), 6th Seisk Tenn., 490; 5th N. J. L., 599;
70 Ala., 626; 53d Miss., 513; 9th Cush. (Mass.), 291; 86 N.
C., 290; La. Ann., 444; 10 Lee Va., 631; see also Am. & Eng.
Ency., vol. 29, pages 296 to 303 inclusive, with notes; Minor v.
Guthrie, 9 Ky. Law Rep., 113.

3. The testator can not revoke a will by parol. Sec. 4833, Ky.
Stats., 80 Ky., 661.     •

4. The general rule is that parol testimony is not admissible to
prove the intention of the testator, except where there are
ambiguities in the will.

J. L. BLOOMFIELD, Attorney for Appellees.

1 Does the proper execution of a subsequent will, disposing of an
estate have the effect in and of itself to revoke a former will, or
are express words, "that all former wills are thereby revoked,"
necessary to such revocation? Ky. Stats., sec. 4824 (definition of
Will); Ky. Stats., sec. 4833 (revocation of Will); sec. 4834 (re-
voked, not revived); 4 B. Monroe, 422; 7 B. Monroe, 408.

Opinion of the court by JUDGE BURNAM—Reversing.

Appellants, without notice to appellees, caused a paper
dated July 22, 1893, to be probated in the McCracken
County Court on the 12th day of May, 1897, as the last will
and testament of Barbara Muller, deceased. Appellees ap-
pealed to the circuit court, and on the trial the jury found
the paper not to be the last will of Barbara Muller, and
judgment was rendered in accordance therewith. This
paper devised to appellants property of the value of sev-
eral thousand dollars, and excluded appellees, with the ex-
ception of a bequest of five dollars to each of them.

The grounds relied upon by appellees for setting aside.

the will probated by the county court were: First, that
that testatrix had subsequent to its execution, in 1865,
executed another will, in which she made an entirely dif-
ferent disposition of her property, and in which she pro-
vided for appellees equally with appellants, and which had
either been mislaid or destroyed subsequently; second, that
the will of 1893 was procured by reason of the undue influ-
ence of William Muller and others over testatrix. Appel-
lants denied, in substance, that the will of 1893 was re-
voked by testatrix by the execution of any subsequent
paper, or that she was induced to execute it by undue in-
fluence. There seems to have been little or no testimony
offered to support the charge of undue influence, and the
real point relied upon by appellees to invalidate the will
of 1893, was that the execution of the will of 1895, in due
form of law, *ipso facto* revoked all previous wills executed
by testatrix, while on the other hand it was the contention
of appellants that the mere proof of the execution of the
paper of 1895 did not necessarily revoke the will of 1893,
and that the burden was upon appellees to have shown
either that it contained a clause expressly revoking the
earlier will, which existed uncanceled, or that testatrix
by the execution of the last paper made a disposition of
her property which was entirely inconsistent with the will
of 1893, and that it was intended by her to take the place
of the former paper.

Section 4832 of the Kentucky Statutes provides that "the
will of a testator will be revoked by his subsequent mar-
riage," with certain exceptions pointed out in the statute.
Section 4833 provides that "no will or codicil, or any part
thereof, shall be revoked unless by the marriage of the tes-
tator, or by a subsequent will or codicil or by some writ-

ing declaring an intention to revoke the same executed in the manner in which a will is required to be executed." The statute does not say that the mere execution by testator of a subsequent testamentary paper, or paper purporting to be a subsequent will, shall *ipso facto* revoke all previous wills. On the contrary, it provides that a will duly executed shall not be revoked except by the marriage of testator, or by a subsequent will or codicil or writing, declaring an intention to revoke, executed in the same manner in which a will is required to be executed. If the mere execution of a subsequent testamentary paper, without regard to its intent or contents, necessarily revokes *in toto* all former wills, it would follow that the execution of a codicil, without regard to its contents, would also have the same effect to revoke a prior will *in toto*, as the statute uses the term "subsequent will or codicil" in exactly the same sense. The law is well settled that a subsequent will does not revoke a former one unless it contains a clause of revocation, or is substantially inconsistent with it. Where it is inconsistent with the former will only in some of its provisions, it is only a revocation *pro tanto*. See Nelson v. McGiffert, 3 Barb. Ch., 158; Brant v. Wilson, 8 Cow., 56; and Minor v. Guthrie, (Ky.), 4 S. W., 179. Schouler, Wills, section 407, says: "The latter will, though well executed, does not revoke the earlier one, as such, and without express words of revocation, except by being inconsistent with it. And by the extent of such inconsistency must be measured the extent of the revocation. To operate a total revocation in such a case, the two dispositions must be so plainly inconsistent as to be incapable of standing together. Only a revocation *pro tanto* results where the effect is that of a partial inconsistency. It is like making a will, and then adding a codicil; the final disposition reading by the

light of both instruments together, as a correct whole. For any number of testamentary instruments, executed at different times, may constitute one's 'last will,' in legal effect. . . . The governing principle in all such cases is the testator's intention. And one's intention in making a new will may have been to dispose of other property or make new provisions perfectly consistent with the former, or else thereby to revoke *pro tanto* by amendment. It does not follow that a full revocation was intended." And the same author, in secttion 412, says: "The execution of a subsequent will of different tenor operates to revoke a former one, notwithstanding the latter will be lost or mislaid, or at least can not be found at testator's death. . . . But where a will which can not be produced is relied upon, as revoking by implication a former one, its contents should be thoroughly established. And the mere fact that a later will was made by no means justifies the inference that it revokes in effect, without proof of its actual contents." Williams, Ex'rs, section 162, says: "A subsequent will revokes only so much of a former will as is inconsistent with the last instrument. If, therefore, the latter or latest will dispose of the whole of the testator's estate, all former wills are thereby revoked; but if, in the absence of an expressed revocation, a partial disposition of the estate is thereby made, consistent with the dispositions made in the prior will or wills, or with a portion of them, they may both or all stand as the last will of the testator, to the extent to which the latter do not exclude the former. It is clear that it is the duty of the court to give effect to every part of every will of the testator, if the several dispositions can be reconciled; the rule of construction being substantially the same where there are several wills to be harmonized, as where there are several

clauses in the same will or in a will and codicil. Subsequent wills, indeed, perform the office of codicils. It is held that the revocation of a will may be proved by proving the execution of a subsequent will by the testator, which is lost, and has not been, therefore, admitted to probate. This rule is necessarily confined to cases where the subsequent will either expressly revokes the former, or contains a different disposition of the whole estate, as by appointment of an executor and residuary legatee; and the evidence to establish its execution, as well as its inconsistency with the former will, should be clear and satisfactory. There can be no revocation by a later will, of which the contents are unknown."

The testimony in this case shows conclusively the execution by the testatrix in 1895 of a testamentary paper. Graves, one of the attesting witnesses, says that decedent came to the office of Mr. Lightfoot and himself, accompanied by his son, for the purpose of having a will prepared; that he wrote the will at the dictation of Mr. Lightfoot; that each clause was read and explained to testatrix; that it was duly signed and executed by her, and attested by himself and Mr. Winchester; that she took the will away with her; and that he had never seen it afterwards. The testimony of Winchester is to the same effect.

Contestants offered to prove by the witness Graves that the paper prepared by him was a lengthy document, purporting to dispose of the whole estate of testatrix, and that it was his recollection that it gave to contestant John P. Muller a house and lot in Paducah, Ky. This testimony was objected to, and the objection sustained, and we think erroneously. After proof that this paper was lost and could not be found, it was competent to establish its contents by parol testimony, and to show either that it con-

tained a clause revoking all former wills, or that it made a disposition of her property which was inconsistent with the bequests of the former will; and the declaration of the testatrix as to the contents of the will itself were competent, as secondary evidence, to show its provisions, and to establish the fact that they were inconsistent with those of the former paper, as the burden of proof was on contestants not only to show a due and proper execution of the last instrument, but also that the disposition of the property of testatrix therein made was substantially different from that made in the will offered for probate, and inconsistent therewith.

In all of the instructions given to the jury on the trial they were told, in substance, that the mere execution of a subsequent will was of itself sufficient to authorize them to find that the prior will had thereby been revoked, and all testimony offered by contestants conducing to establish the contents of the last will, and to show its inconsistency with the former will, was excluded upon the ground that it was immaterial. We think the court erred in the instruction given to the jury and in the rejection of this testimony, and for these reasons the judgment is reversed, and the cause remanded for a new trial consistent with this opinion.

Judge Guffy dissents.