## Atherton, et al. v. Gaslin, et al.

(Decided March 24, 1922.)

### Appeal from Nelson Circuit Court.

Wills—Contest—Forgery—Declarations of Testator Admissible in Corroboration of Other Evidence as to Genuineness.—In the contest of a will on the sole ground of forgery, both the ante-testamentary declarations of the testator that he intended to make a will leaving his property to the contestee, and his post-testamentary declarations that he had made such a will, are admissible in corroboration of other and more direct evidence tending to show the genuineness of the will.

NAT W. HALSTEAD, THAD CHEATHAM and FRANK E. DAUGHERTY for appellants.

JOHN A. FULTON, JOHN S. KELLY and KELLY & KELLY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The principal question on this appeal is whether in a contest of a will, on the sole ground of forgery, the declarations of the testator are admissible in corroboration of other and more direct evidence tending to show the genuineness of the will.

The question arises in the following way: J. F. Atherton, a bachelor, died March 6, 1919. He had two full brothers, Filmore Atherton and William B. Atherton, and one full sister, Emma Atherton, who married A. W. Gaslin and died leaving four children, W. B. Gaslin, Maude Farmer, Maude Beeler and Roscoe Gaslin. He had two half-brothers, B. A. Atherton and P. D. Atherton, and three half-sisters, Ava M. Atherton, who married A. L. Gaslin, Etherl Atherton and Nettie Atherton, who married L. R. Beeler and died leaving two children, Margaret Pottinger and Ethel Chambers. Upon the death of J. F. Atherton there was probated in the Nelson county court a paper purporting to be his holographic will, by which he devised all his property to his nephew, Roscoe Gaslin. Thereupon William B. Atherton and others prosecuted an appeal to the Nelson circuit court where the will was contested on the ground of forgery. A trial before a jury resulted in a verdict sustaining the will and the contestants appeal.

After showing by several witnesses, who were qualified to testify on the subject, that the will was wholly in the handwriting of the testator, the contestees were permitted to show that the testator stated before making his will that he intended to leave his property to Roscoe Gaslin, and that he stated after the date of the will that he had made a will making Roscoe Gaslin his sole devisee.

There is little, if any, dissent from the rule that the declarations of the testator are admissible on the issue of mental incapacity, for they are outward manifestations of a state of mind and tend more or less directly to show what that state of mind was. Alexander's Commentaries on Wills, section 362. Though it was held in Throckmorton v. Holt, 180 U. S. 352, 45 L. Ed. 663, that the declarations of the testator were not admissible to prove or disprove the making of a will, and that there was no distinction between ante-testamentary and post-testamentary statements, Mr. Wigmore says that the admissibility of the former is entirely settled, and our investigation of the question has led to the same conclusion. Wigmore on Evidence, vol 3, section 1735; State v. Ready, 75 Atl. 564, 28 L. R. A (N. S.) 240.

Admissibility of such statements proceeds on the principle that a design or plan to do or not to do a specific act has probative value to show that the act was in fact done or not done. Wigmore on Evidence, vol 1, section

102. Hence if the issue is whether a will, or a will of a particular tenor, was executed, the pre-existing testamentary design of the testator is relevant, and such design may be evidenced by his statements. Wigmore on Evidence, vol. 3, section 1735.

When we come to post-testamentary statements of the testator as to the execution, contents or revocation of a will, we find that there is a great diversity of opinion. Many of the courts take the unqualified position that such statements are mere assertions of an external fact offered as evidence of the truth of the assertion, and do not fall within any of the exceptions to the hearsay rule. Illustrative cases taking this view of the question are: Boylan v. Meeker, 28 N. J. L. 276; In Re Gordon's Will, 50 N. J. Eq. 397, 26 Atl. 268; affirmed in 52 N. J. Eq. 317, 30 Atl. 19; Leslie v. McMurtry, 60 Ark. 301, 30 S. W. 33; Dan v. Brown, 4 Cow. 490; Grant v. Grant, 1 Sand. Ch. 235; Kennedy's Will, 167 N. Y. 163, 60 N. E. 442; Earp v. Edgington, 107 Tenn. 23, 64 S. W. 40; Walton v. Kendrick, 25 L. R. A. 701 (Mo.). Among the cases holding that such evidence is admissible are the following: Sugden v. St. Leonards, L. R. I. P. D. 154; Conroy v. Gayle, 61 Ala. 116; Patterson v. Hickey, 32 Ga. 159; Lane v. Hill, 68 N. H. 245, 44 Atl. 293; Tinan v. Pashal, 27 Tex. 300; Hoppe v. Byars, 60 Md. 381; Glockner v. Glockner, 106 Atl. (Penn.) 731; In Re Johnson's Estate, 175 N. W. (Wis.) 917. In Hoppe v. Byars, *supra,* it was held that the post-testamentary declarations of a testator, that he had made a will of a particular tenor, though not admissible to establish the paper, were admissible in corroboration of direct evidence of execution. In the case of In Re Johnson's Estate, *supra,* it was held that post-testamentary declarations of a testator, to the effect that he had made a will, and for the benefit of proponent, were admissible in proceedings to probate a will contested for lack of genuineness of signature. The courts, in taking this view of the question, either make a special exception to the hearsay rule, or admit the testimony as indicating the testator's belief or state of mind, from which we may infer the doing of the act which produced that belief or state of mind.

Taking up the opinions of this court we find that in the case of Newell Beauchamp's Will, 4 T. B. Mon. 361, the question involved was one of revocation. The same witness, who wrote and proved the execution of the

will, testified that some days after its publication he informed the testator that the will was burned. Whereupon testator replied that it was done by his orders, and that the law would make a will for him. In holding that the will had been revoked, the court said:

"Revocation is an act of the mind; it consists in the will and purpose to destroy, or annul the operation of the instrument. This will or purpose of mind must be made known by some one or other of those outward signs or symbols of revocation, pointed out by the statute. Any one of these signs or symbols performed in the slightest manner, joined with the declared intent, or settled purpose of revoking will be a good revocation. It is the intention that must govern. The question is, has he revoked or not—*revocavit ven non?* It is a question of fact and intention. In pursuing the inquiry, the existence of one fact may be inferred from the proof of other facts.

"From the facts proved, of the destruction of the instrument, the knowledge thereof, by the decedent, his declarations that he had ordered it, that the law would make a will for him, and his abstaining from any attempt to supply the loss or destruction of the paper, the intention to revoke must be inferred. It can not be necessary to prove positively and in terms the total destruction of the paper in the presence of the testator, by a witness who saw it. It is enough that the inward intent to revoke, and the outward symbol of revocation are so knit together and bound by the evidence that they cannot be separated."

We also held in Steele v. Price, 5 B. Mon. 58, that the failure of one, who is informed of the destruction of his will, to publish another, furnished a *prima facie* presumption of intention to revoke the will destroyed, but that this presumption could be rebutted by evidence of the same grade, such as the declarations of the testator respecting his testamentary intentions. In the case of Chisholm's Heirs v. Ben, &c., 7 B. Mon. 408, it was held that the declarations of a decedent in his lifetime, tending to show that he had a will at the time in existence, are admissible to repel the presumption of a revocation, but only as corroborative and as the lowest species of evidence. It was further held that the declarations of a decedent as to the execution and contents of his will are only admissible in corroboration of other evidence, and when there is no other evidence, his declarations should

be rejected. In Wall v. Dimmitt, 114 Ky. 923, 72 S. W. 300, we held that declarations of the testator, whether made before or after the execution of the will, were not competent as direct and substantive evidence of undue influence or to show that the will was procured thereby, but are admissible to show the mental condition of testator at the time of making the will and his susceptibility to influences by which he was surrounded. While the opinion in the case of Mercer's Admr v. Mackin, 14 Bush 434, employs certain language from which it might be inferred that the court was of the opinion that the declarations of a testator as to the execution and contents of his will are not admissible for any purpose, a careful examination of the opinion will show that all the court intended to hold was that the declarations of the testator are not alone sufficient to prove the due execution or contents of his will, and are admissible only in corroboration of other evidence. Thus, after making it plain that the statute required that the execution of a will should be attended by certain formalities, and that direct evidence is necessary to show that these formalities had been complied with, and that, in the absence of such evidence, the testator's declarations should be rejected, the conclusion of the opinion is as follows:

"As therefore no case was made out for the admission of evidence of the declarations of Mercer, on the ground that his will had been fraudulently suppressed, and as there was no legal evidence of its execution or contents to be corroborated by evidence of his declarations, the circuit court should have decided as matter of law that the evidence was insufficient, and have directed the jury to find that no part of the writing before them was the will of Felix Mercer, and have affirmed the judgment of the county court."

In the case of Hannah v. Peake, 2 A. K. Marshall, 133, decided in the year 1819, the genuineness of the will and of certain interlineations therein was the only question involved. There was not only direct evidence that the will was in the handwriting of testator, but a Mr. Johnson deposed that the testator, on one occasion when they were in Canada together, recited to him in a friendly conversation the disposition which he had made or intended to make of his estate, and that the provisions of the will corresponded substantially with the recital. While the court did not pass on the admissibility of this evidence, it placed particular emphasis thereon in reversing the

judgment refusing to probate the will. In the more recent case of McNamara v. Coughlin, 159 Ky. 810, 169 S. W. 555, the principal question was the genuineness of a paper purporting to be the holographic will of John J. Coughlin. In addition to direct evidence on the question, there was evidence that the testator had expressed the purpose to leave his property to the devisees, and had fixed it so that they would get everything he had. On the other hand, there was evidence to the effect that the testator declared that he had no intention of making a will, but would let the law take its course. While the question of admissibility was not discussed, the court quoted the evidence and held that the question of the genuineness was one for the jury.

Perhaps the best considered case on the question is that of Sugden v. St. Leonards, *supra,* holding that declarations, written or oral, made by a testator, both before and after the execution of his will, are, in the event of its loss, admissible as secondary evidence of its contents, and overruling Quick v. Quick, 3 S. W. & Tr. 442, announcing a contrary rule as to post-testamentary declarations. Able opinions were delivered by the Lord Chief Justice and Sir George Jessel, Master of the Rolls. In the latter's opinion we find the following:

"The next point, and one no doubt also of great importance, is what secondary evidence is admissible. In this particular instance there is the evidence of a person who had seen the will, and the real point to be considered and decided is whether that evidence can be confirmed or corroborated by declarations of the testator made, either to that witness or to other persons, and if so, whether those declarations to be admissible in evidence must be limited to declarations made at or before the execution of the will, or may be extended to declarations made after the execution of the will.

"Now, it might well have been that our law, like the law of some other countries, should have admitted as evidence the declarations of persons who are dead in all cases where they were made under circumstances in which such evidence ought properly to have been admitted, that is, where the person who made them had no interest to the contrary, and where they were made before the commencement of litigation. That is not, however, our law. As a rule the declarations, whether in writing or oral, made by deceased persons, are not admissible in evidence at all. But so inconvenient was the law upon

this subject, so frequently has it shut out the only obtainable evidence, so frequently would it have caused a most crying and intolerable injustice, that a large number of exceptions have been made to the general rule.

"I will consider, first, what the exceptions are, and what is the principle which guides the court in making exceptions. The exceptions are generally considered to be three principal and three subordinate exceptions. It does not matter in what order I take them. First, there is an exception of a declaration accompanying an act; secondly, of a declaration against interest; and, thirdly, of a declaration made by a person in the course of business, one which it was his duty to make. Those are the three large exceptions.

"There are then some smaller exceptions; the first is the proof of matters of public and general interest, one might say a quasi historical interest, not actualy historical, where we admit the declarations of persons who may from their positions be fairly presumed to have had knowledge on the subject.

"In the next place we admit evidence which is in its nature very weak indeed, that is, in matters of pedigree, where we admit declarations of deceased members of a family, on its being shown that the persons were members of the family.

"Now I take it the principle which underlies all these exceptions is the same. In the first place, the case must be one in which it is difficult to obtain other evidence, for no doubt the ground for admitting the exceptions was that very difficulty. In the next place the declarant must be disinterested; that is, disinterested in the sense that the declaration was not made in favor of his interest. And, thirdly, the declaration must be made before dispute or litigation, so that it was made without bias on account of the existence of a dispute or litigation which the declarant might be supposed to favor. Lastly, and this appears to me one of the strongest reasons for admitting it, the declarant must have had peculiar means of knowledge not possessed in ordinary cases.

"Now, all these reasons exist in testifying both as to matters of public and general interest, and as to matters of pedigree, and some, if not all of them, exist in the other cases to which I have referred. They all exist in the case of a testator declaring the contents of his will. Of course, as in the case of pedigree, the courts must be cautious in admitting such evidence. From its very

nature it is evidence not open to the test of cross-examination, it is very often produced at second or third hand, and it is therefore particularly liable to lose something of its color in the course of transmission. It is so easily and so frequently fabricated that all courts which have to dispose of such cases must be especially on their guard.

"But that goes only to the question of the weight to be attributed to the evidence when admitted, it does not go to the question of admitting the evidence itself; and I must say it appears to me that, having regard to the reasons and principles which have induced the tribunals of this country to admit exceptions in the other cases to which I have referred, we should be equally justified and equally bound to admit it in this case. When I say equally, perhaps I state the case a little too low, because if there is any case in this world in which it is incumbent upon a tribunal not to grant a premium for fraud or wrong; not to hold out to the world that any man who is able to get hold of the will of a testator which may disappoint him of his expectations, just or unjust, if he once destroys it, shall be able to acquire the property either for himself or for those whom he wishes to benefit—I say if ever there was such a case it is the case of a lost will. The court should be anxious, not narrowly to restrict the rules of evidence, which were made for the purpose of furthering truth and justice, but, guided by those great principles which have guided other tribunals in other countries in admitting this kind of evidence generally, to admit it at all events in the special case which we have under consideration."

It is interesting to note that Mellish, L. J., though dissenting from that portion of the opinion holding that post-testamentary declarations were admissible because he felt bound by Quick v. Quick, *supra*, conceded the desirability of such a rule in the following language:

"I am not myself prepared to say that the decision in Quick v. Quick, (1) is bad law. If I was asked what I think it would be desirable should be evidence, I have not the least hesitation in saying that I think it would be a highly desirable improvement in the law if the rule was that all statements made by persons who are dead respecting matters of which they had a personal knowledge, and made *ante litem motam,* should be admissible. There is no doubt that by rejecting such evidence we do reject a most valuable source of evidence. But the difficulty I

feel is this, that I cannot satisfactorily to my own mind find any distinction between the statement of a testator as to the contents of his will, and any other statement of a deceased person as to any fact peculiarly within his knowledge, which, beyond all question, as the law now stands, we are not, as a general rule, entitled to receive."

We do not have to meet the same situation that confronted the court in the case of Sugden v. St. Leonards, *supra*. Long before that case was decided, we had adopted the rule that post-testamentary declarations of the testator as to the contents of a lost will are admissible in corroboration of other evidence. We perceive no reason for making any distinction between the testator's declaration as to the contents of his will and his declaration as to the making of a will. Each shows the testator's belief or state of mind, from which we may naturally infer the existence of the fact or the doing of the act which produced that belief or state of mind. Not only so, but we have affirmed cases involving the genuineness of a will and based our conclusion on the testator's post-testamentary declaration as to its execution. Furthermore, there is a plain intimation in the case of Mercer's Admr. v. Mackin, *supra*, that the testator's declarations as to the execution of his will are admissible in corroboration of other evidence. That such declarations are of a persuasive character, and may often throw light on a doubtful issue, cannot be doubted. The fact that they may be manufactured goes to their weight and not to their admissibility. In view of these considerations and of the manifest tendency of the courts of today to enlarge rather than restrict the character of evidence that may be received, we conclude that both the ante-testamentary and post-testamentary declarations of the testator were admissible in corroboration of other evidence tending to show the genuineness of the will.

We have examined with care the other errors assigned, but find none of them of sufficient importance to authorize a reversal.

Judgment affirmed.

Whole court sitting.