## Wood v. Wood et al.

(Decided December 15, 1931.)

COLEMAN TAYLOR for appellant.

O. M. SMITH, C. T. McCORMICK, Jr., and JOHN S. CARROLL, guardian ad litum and Warning Order Attorney, for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This is a proceeding to probate an alleged lost will. G. B. Wood died childless, survived by his widow, Bettie Wood and numerous collateral kindred, consisting of four brothers and a sister and the representatives of three deceased sisters.

The proceeding originated in the county court upon a formal application by the widow to establish as the last will of G. B. Wood a lost instrument dated the 4th day of January, 1915, and averred to have been duly executed by G. B. Wood as his last will and not revoked by him during life. The county court denied the application for admission of the purported will to probate, and an appeal to the circuit court was prosecuted by the widow who was the sole devisee under the alleged lost will. The trial in the circuit court was before a jury, and resulted in a verdict against the alleged will, rendered pursuant to a peremptory instruction. The widow has now appealed to this court.

The facts which the evidence tended to establish may be briefly stated. G. B. Wood had been married for nearly thirty years, and had lived happily with his wife. He died suddenly, being stricken while attending to some business matters at a bank, and living but a few hours after the attack. Some nine or ten years prior to his death, Mr. Wood told his wife that he had made a will devising to her his entire estate and nominating her as the executrix. A near neighbor, similarly circumstanced, had known Mr. Wood all his life, and was on confidential terms with him. They discussed the disposition to be made of their respective properties, and agreed that each ought to make a will providing for his wife. They proceeded to the office of Wilbur F. Browder, then an eminent lawyer of Russellville. Mr. Browder prepared a will for the witness, but it was not executed upon that occasion. He saw the attorney and his assistant preparing a document for Mr. Wood, and saw Mr. Wood, Mr. Browder, and the assistant signing a paper.

He did not know the contents of the paper, and he could not state that all three of the persons mentioned signed it. Mr. Wood told him he had made his will and willed all his property to his wife. The witness got Mr. Wood to keep his will for him, and that will was found in a private lock box at the bank with the papers of Mr. Wood. But no will of Mr. Wood was found in the lock box. A diligent search failed to discover any such document. It was shown that Mr. Browder had made a charge on his account book against G. B. Wood on January 4, 1915, "for writing his will this day." A notation in the handwriting of Mr. Browder, "see it in my safe," appeared in connection with the charge. The account was paid on February 11, 1915, by a check signed G. B. Wood, marked, "Account to date." The young lady who was then Mr. Browder's assistant was a witness for the proponent, but she did not remember writing or witnessing the will, or know anything of its contents. She explained the routine customarily pursued by Mr. Browder in such matters, and stated that he was extremely careful and competent regarding the preparation and preservation of papers for his clients. After Mr. Browder's death, she found in his safe a number of papers, such as wills, and she delivered them to the owners, or to the persons entitled thereto. But she had no definite recollection of finding Mr. Wood's will, or even of knowing that gentleman. She did have an indefinite impression, however, that Mr. Wood's will was left by him at the county clerk's office. Another witness testified that Mr. Wood had told him his will was at the county clerk's office. Mr. Wood told various persons under varying circumstances that he had made a will by which he had devised all of his property to his wife. Only two days before his death he stated to a neighbor that his affairs were arranged so that if he died before his wife his entire estate would go to her. His declarations were frequent and consistent to the effect indicated.

. In order to establish a lost will it is essential for the proponents to prove by clear evidence the due execution, the loss, the contents, and the continued recognition of the will unrevoked. Steele v. Price, 5 B. Mon. 58; Chisholm v. Ben., 7 B. Mon. 498; Mercer v. Macklin, 14 Bush 434; Baltzell v. Ates, 181 Ky. 415, 205 S. W. 548.

Declarations of the alleged testator, before and after the supposed testamentary act, are competent in corrob-

oration of other evidence of the main fact to which the declarations are addressed. Muller v. Muller, 108 Ky. 511, 56 S. W. 802, 22 Ky. Law Rep. 207; Atherton v. Gaslin, 194 Ky. 460, 239 S. W. 771; Stuart v. McWhorter, 238 Ky. 82, 36 S. W. (2d) 842; Clark v. Turner, 50 Neb. 290, 69 N. W. 843, 38 L. R. A. 433; In re Havel, 156 Minn. 253, 194 N. W. 633, 34 A. L. R. 1300; Inlow v. Hughes, 38 Ind. App. 375, 76 N. E. 763; Lane v. Hill, 68 N. H. 275, 44 A. 393, 73 Am. St. Rep. 591; Rea v. Pursley, 170 Ga. 788, 154 S. E. 325; In re Creger's Estate, 135 Okl. 77, 274 P. 30, 62 A. L. R. 690.

But declarations of the alleged testator, standing alone, no matter how oft-repeated, are not sufficient to establish the due execution or the contents of an alleged lost will. Chisholm v. Ben, supra; Mercer v. Macklin, 14 Bush 434; Atherton v. Gaslin, supra.

In this case the jury might have found from the evidence that Mr. Wood desired to make a will and to devise his estate to his wife; that he employed and paid a competent lawyer for the purpose of preparing such a will; that he died in the belief that he had a will disposing of his estate as he desired. But the contents of that supposed will could be derived only from the declarations of the deceased. No witness saw or read the will, or gave the substance of its provisions. The only witness that could possibly have known the substance of the will from an inspection of its provisions remembered nothing about it. This predicament of the appellant is frankly faced by her counsel, and the argument is advanced that the declarations of the alleged testator as to the substance and contents of his will may be enough to satisfy the jury when the due execution of the document is satisfactorily proven. But such is not the rule, and the reasons that require the rule apply equally to prevent the establishment of the substance of a will solely by oral declarations of the testator. It would in effect admit to probate the oral statements of a testator as his will, when no one ever saw or read the writing, and, indeed, when no such writing ever existed. As pointed out in Mercer v. Macklin, supra, the merits of a case might be so appealing as to incline the court in a particular instance to admit the will. As there, so here. But the doctrine is so fraught with danger that its adoption has been denied by the courts because it would lead necessarily to injustice and fraud. In the very nature

of things, there would be no way to prove or to punish perjury respecting the alleged declarations of a deceased person. It does not aid the declaration of the deceased concerning the contents of a paper to prove that he carefully caused the paper to be prepared and executed; for, when the formal document is lost, its contents must be proved by some one familiar with the facts from reading the document itself. Indeed, it has been said that the testimony of a witness who heard the testator read his will amounted to nothing more than proof of the declarations of the alleged testator. Clark v. Turner, 50 Neb. 290, 69 N. W. 843, 38 L. R. A. 433.

Neither the due execution nor the contents of an alleged lost will can be established by the mere declarations of the alleged testator. There must be positive proof of facts showing the due execution, the substance of the contents, and the loss of the document before it can be admitted to probate without being produced. The declarations of the deceased tending to corroborate or to confirm other evidence of the main fact are admissible in evidence, but such declarations alone are not sufficient to establish any one of the ingredients essential to constitute a case for the admission of a lost will to probate. Since it is not contended in this case that the contents of the alleged lost will were shown except by the oral declarations of the deceased, it was not error for the court to deny its admission to probate. Hence the jury was properly instructed to render a verdict accordingly.

The judgment is affirmed.