## Madden et al. v. Sevier et al.
(Decided Jan. 28, 1938.)

ELMER DECKER for appellants.

FLEM D. SAMPSON, J. M. ROBSION and G. M. MANNING for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Alexander Sevier died in 1928, a resident of Knox county, Ky.

He left surviving him three children, the appellees, John R. Sevier and Cora B. Sevier, and the appellant, Marena S. Madden. John R. Sevier is the father of three children, the appellants, Ruth H., Nancy E. and John R. Sevier, Jr., while Mrs. Madden is the mother of the appellants, Nancy, Marena, Alexander, and William Madden, Jr.

These are the persons interested as named beneficiaries under the alleged lost will and codicil thereto of Alexander Sevier, deceased.

This proceeding was initiated in the Knox county court by the appellant, Mrs. Marena S. Madden, who offered therein for probate certain papers claimed to be copies of the alleged lost will and codicil thereto of

Alexander Sevier. The county judge held them to be copies of the deceased's will and codicil and ordered them to be probated and recorded as such.

This holding of the county court was appealed from to the Knox circuit court where, upon a hearing and trial before the Hon. P. L. Senters, its judge (no jury being impaneled), the judgment was reversed upon his finding and adjudging, under the pleadings and evidence heard, that the writings offered in evidence for probate were not identified and established as the will and codicil thereto of the deceased, Alexander Sevier.

Complaining of this judgment, Marena S. Madden, by counsel, and the above-named grandchildren of the deceased who were named as beneficiaries in the alleged will, by their statutory guardian, moved the court to set aside the judgment and grant them a new trial, upon the grounds that the court erred in permitting incompetent evidence to be heard on the trial, and that the judgment of the court was contrary to law and not supported by sufficient evidence.

Their motion and grounds having been overruled, an appeal was prayed and granted.

It appears that the only question presented upon this appeal for our determination is that of whether or not the evidence heard upon the trial was sufficient to identify and establish the papers offered for probate as being a true copy of an unrevoked lost will and codicil thereto of the deceased Sevier.

Appellants contend that the evidence introduced by them was sufficient, and that therefore the circuit court's ruling, finding the evidence insufficient to warrant the county court's finding and order directing the probate of the offered papers as the last will of the testator, was erroneous.

Such being the question presented and the contention of the appellants as to same, we will now turn our attention to its determination by considering the evidence adduced by appellants to establish the papers, offered in evidence, as being true copies of the deceased's last will and codicil thereto, the execution and contents of which they purported to clearly show.

The first witness called by appellants, Mr. Faulk-

ner, testified that he was unable to identify the paper offered as a copy of the alleged lost will and, further, that though he signed a writing purported to be the original will of the said Sevier upon his request, he did so without reading it or otherwise becoming advised as to its contents; that he did not remember the day or year shown as the date of the execution of this will he signed, but that he saw it was in Mr. Sevier's handwriting; that he was unable to say that the paper handed him for identification upon the trial was a copy of the instrument or writing which he had signed at the request and as the will of the said Mr. Sevier.

Also, Mr. Tinsely, when called as a witness, testified that Mr. Sevier, the deceased, had on different occasions exhibited to him three different wills, each written and signed by him, but that he could not state what any of the wills contained or that the writing then handed him for identification was a copy of any one of the wills so exhibited to him. He further stated that he did not know what had become of any of the wills, so shown him, or whether Mr. Sevier had kept or continued to recognize any one of them as his last will and testament up to the time of his death.

The appellee, John R. Sevier, named as a beneficiary in the alleged lost will, testified that his father, the deceased Alexander Sevier, was eighty-two years of age at the time of his death; that immediately after his death, he and his two sisters went to the National Bank and opened his deposit box which he kept there and removed all of its contents (mortgages, notes, certificates, and other valuable papers), but that there was no will found therein by them; that the paper here offered for probate and claimed to be a copy of the will of their father, Alexander Sevier, was first produced by Mrs. Madden. Further, he testified that he had seen several copies of different wills made from time to time by his father, which he had given to each of his children; that his father, "as far back as 1918, seemed possessed with the idea of making a will" and that "between 1918 and 1928, he made as many as five different wills," and then "he added codicils."

By this summary of the evidence, even conceding it was sufficient to show that the deceased, Alexander

Sevier, had executed a holographic will and codicil thereto, it is further shown that such will or wills as he may have written or made remained in his sole possession and custody up to the time of his death. Further, it is to be noted that neither of the two witnesses who signed the alleged lost will at the request of the deceased (even though it was one of holographic character, requiring no witnesses) testified as to knowing or being told anything as to the contents of the will he was asked to witness or aught as to what had become of it between the time of his seeing and signing it and Mr. Sevier's death, nor did any witness testify that the deceased had continued to preserve or recognize the alleged lost will in question as his last will. Also, it is both testified and admitted that though a diligent, careful, and painstaking search was made by all of the testator's children for the will of their father immediately after his death (that they had gone over the contents of his safety box at the bank and also inspected the contents of his safe at his office, wherein he was supposed to keep his valuables, and had searched other places, where it was most probable a will would be found) that no will was found by them.

It may be conceded that the general rule is that when a legal will is accidentally lost or destroyed before the death of the testator, it continues to be legally effective and may be established in probate proceedings by evidence showing its loss without revocation, accompanied by proof, to a reasonable certainty, of its contents, the best evidence of which is a copy of the will, when satisfactorily proved.

In Ferguson v. Billups, 244 Ky. 85, 50 S. W. (2d) 35, in discussing the matter of the probation of lost wills, we said:

"In order to establish a lost will, it is essential to prove the due execution, contents, and continued existence of the will unrevoked by the testator. Chisholm's Heirs v. Ben, 7 B. Mon. 408; Baltzell v. Ates, 181 Ky. [413] 415, 205 S. W. 548; Wood v. Wood, 241 Ky. 506, 44 S. W. (2d) 539. Each of the essential elements of such a case must be proven by clear and convincing evidence. Bradshaw v. Butler, 125 Ky. 162, 100 S. W. 837, 30 Ky. Law Rep.

1249. The declarations of the deceased, whether before or after the alleged testamentary act, are competent in corroboration of other evidence of the main facts, but insufficient in and of themselves to prove either of the essential ingredients. Atherton v. Gaslin, 194 Ky. 460, 239 S. W. 771; Mercer's Adm'r v. Mackin, 14 Bush, 434.''

Again this same rule is thus declared in the Wood Case, supra:

''In order to establish a lost will it is essential for the proponents to prove by clear evidence the due execution, the loss, the contents, and the continued recognition of the will unrevoked. * * *

''But declarations of the alleged testator, standing alone, no matter how oft-repeated, are not sufficient to establish the due execution or the contents of an alleged lost will.''

Both of these quoted cases, in declaring this rule, follow its earlier declaration made in the cited Baltzell Case, where the court said:

''To prove a lost will, its execution, contents, and the fact that it was not revoked, must be clearly and satisfactorily established.''

And further that:

''It is also the rule that a will, last seen in the custody of the testator, which cannot be found after due search, or its loss accounted for, is presumed to have been revoked. Mercer v. Mercer's Adm'r, 87 Ky. 21, 7 S. W. 307, 9 Ky. Law Rep. 870; Webster v. Lowe, 107 Ky. 293, 53 S. W. 1030, 21 Ky. Law Rep. 998. But this presumption may be rebutted by the acts and declarations of the testator, which are admissible on the question of revocation. Chisholm's Heirs v. Ben et al., 7 B. Mon. 408.''

Measuring the evidence here introduced to establish the execution and contents of the deceased's alleged lost will and the identity therewith of the paper offered for probate, as being a true copy thereof, by the rule announced in the above-cited and quoted cases, it clearly appears that it is insufficient to meet the named requirements of this settled rule that the proponents, to have probate of the lost will, must prove ''by clear evi-

dence the due execution, the loss, the contents, and the continued recognition of the will unrevoked.''

Conceding, arguendo, that this evidence here introduced is sufficient to show the deceased duly made and executed one or more legal wills, all of which were found to have disappeared or to have been lost or destroyed, upon diligent inquiry and search made at the time of his death, the evidence is clearly insufficient to establish more or to meet the further exacting requirements of the rule, declaring that proponents must show that the lost will was then maintained in existence and not revoked by the maker, where retaining it in his possession at the time of his death.

In the Baltzell Case, supra, it is stated, as the controlling rule in such case, that ''a will, last seen in the custody of the testator, which cannot be found after due search, or its loss accounted for, is presumed to have been revoked,'' but that ''this presumption may be rebutted by the acts and declarations of the testator, which are admissible on the question of revocation.''

No evidence tending to rebut this presumption was here presented, nor any evidence as to the contents of the alleged lost will save as might be established by the identification and proof of the paper introduced in evidence as a true copy of the will. The testimony of the witnesses introduced for such purpose, however, failed to identify the paper offered as a true copy of the will which had been exhibited to and signed by them as witnesses.

It may be said upon this evidence, as said in the Ferguson Case, supra:

> ''The fact that the will was last seen in the custody of the testator, and was not found after his death in its accustomed place, constituted a cogent circumstance tending to prove its revocation. Indeed, the failure to find a will last seen in the control of the testator raises a presumption that it was destroyed by him for the purpose of revoking it.''

As stated in section 388, 28 R. C. L. 385, the rule as to this is that ''the evidence to overcome the presumption that a lost will was destroyed by the testator animo revocandi must be clear, satisfactory and convincing.''

While section 4833, Kentucky Statutes, requires the revocatory acts, to which it alone gives effect, to be done by the testator himself, or caused to be done by him in his presence, and although, further, there was here no express or statutory revocation, because of the absence of any evidence tending to show that the will was destroyed by the testator himself, or caused by him to be destroyed in his presence, the rule yet applies that the intention to revoke must be inferred from the cogent circumstances tending to prove its revocation, that the will was last seen in the custody of the testator and was not found after his death in its accustomed place. Steele v. Price et ux., 44 Ky. 58, 5 B. Mon. 58.

Wherefore, we are of the opinion, for the reasons stated, that the judgment of the Knox circuit court, reversing that of the Knox county court and ruling that the papers offered in evidence as the lost will and codicil of the deceased, Alexander Sevier, were not sufficiently shown by the evidence to be his last will and codicil thereto and that he departed this life intestate, should be, and it is, affirmed.