THE STATE, DEFENDANT IN ERROR, v. MATTHEW J.
READY, PLAINTIFF IN ERROR.

Argued November 16, 1909—Decided March 8, 1910.

Where the issue is whether a will was executed, or whether a will
was made to have a certain tenor or provision, the pre-existing
testamentary design of the alleged testator is always relevant:
and, to evidence the existence of that design, his antecedent
**statements are admissible, when not too remote to be material.**

On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch* and *Thomas S.
Henry.*

For the state, *Wilbur A. Mott,* prosecutor of the pleas, and
*Frank E. Bradner.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was con-
victed in the Essex Quarter Sessions of the crime of forging
the will of the late John W. Russell, who died on the 28th of
November, 1905. The record of the conviction was removed
into the Supreme Court for review, and numerous errors were
there assigned and considered. The conclusion reached by
the reviewing tribunal was that the assignments were, each of
them, without legal support, and the conviction was there-
upon affirmed. The present writ of error is sued out to test
the validity of the judgment of affirmance.

We concur in the conclusion reached by the Supreme Court
upon all of the assignments of error, except those which chal-
lenge rulings of the trial court excluding testimony offered
on behalf of the plaintiff in error of declarations made by
Mr. Russell to witnesses who were called upon to prove those
declarations. Their purport was that the deceased intended
to make a will, and that he intended to make a will leaving
his property to Mary Clavin, who was his housekeeper, and

had lived with him in that capacity for about six years preceding his death. They were objected to and excluded upon the ground that they were hearsay.

The will, which was alleged to have been forged by the plaintiff in error, bears date the 15th of November, 1905. By its terms it devised and bequeathed all of the testator's property, real and personal, to one M. Calvin, who was also created by it "executor or executrix" of the will. The declarations of Mr. Russell which were sought to be proved were made, one of them, about three months before his death, and the others "shortly before" that event.

It cannot be doubted that if the decedent, shortly before the date of the controverted will, had made up his mind to make a will, and to leave his property to his housekeeper, Miss Clavin, this pre-existing testamentary design would not only have been relevant, but would have had great potency in determining the question whether the disputed instrument was a forgery or his genuine will, for what a man determines to do, or not to do, he generally does, or refrains from doing, unless something occurs before the time for executing his intention arrives which causes him to change his mind, or prevents him from carrying his intention into execution. To this extent I find no difference in judicial view. But on the question whether a person's intention to make a will, or to make a will of a particular purport, can be shown by his antecedent declarations of that intention, judicial sentiment is altogether out of harmony. In England it is entirely settled that declarations of this character are admissible. In the leading case of *Doe* v. *Palmer*, 16 *Q. B.* 747, an interlineation had been made by the testator in his will, by the terms of which an interest in a portion of his real estate was devised to A. B. Except in the interlined provision she was not mentioned in the will either as devisee or legatee. The question to be determined was whether this interlineation had been made before or after the execution of the will. It was held that antecedent declarations of the testator, expressing an intention to make provision by his will for A. B., were admissible for the purpose of showing the existence of that

intention prior to the time of making the will. Lord Campbell, who delivered the opinion of the court, after reviewing the earlier cases, declared that they were, none of them, adverse to the admissibility of such declarations, and pointed out that "in all cases where there is any imputation of fraud in the making of the will, the declarations of the testator are admitted respecting his dislike or affection for his relations or those who appear in the will to be the objects of his bounty, and respecting his intentions either to benefit them or to pass them by in the disposition of his property." In the case of *Sugden* v. *Lord St. Leonards, L. R.,* 1 *Prob. Div.* 154, it was held by all of the judges that declarations of the testator antedating his will were competent evidence to prove his testamentary intentions. Their admissibility for that purpose was again affirmed in *Dench* v. *Dench, L. R.,* 2 *Prob. Div.* 60. *Woodward* v. *Goulstone, L. R.,* 11 *App. Cas.* 469, the latest case in the House of Lords upon the subject of the admissibility of the declarations of the testator, contains no intimation of a doubt as to the soundness of the earlier decisions I have referred to, so far as they relate to declarations of a testator antedating his will.

In this country courts are divided on the question of the admissibility of such evidence. The leading case against its admissibility is that of *Throckmorton* v. *Holl,* 180 *U. S.* 552. In that case the litigation was over the admission to probate of a paper purporting to be the last will and testatment of Judge Holt. One of the questions was whether or not the alleged will was a forgery. Some of the declarations of the testator were offered as tending to prove, and others as tending to disprove, the *factum* of the will. Mr. Justice Peckham, in an elaborate opinion, after referring to the fact that the state courts are not in accord upon this subject, cites in a marginal note those cases which he considers favor the exclusion of such evidence and those which favor its admission. He concludes that the weight of authority, as well as the principles upon which the law of evidence is founded, necessitate the exclusion of such evidence for any purpose except the determination of the *mental capacity* of the testator. The

first three cases which he cites in support of his conclusion are *Boylan* ads. *Meeker*, 4 *Dutcher* 274; *Rusling* v. *Rusling*, 9 *Stew. Eq.* 603, and *Gordon's Case*, 5 *Dick. Ch. Rep.* 397. I shall discuss these cases later. Other of those authorities are *Shailer* v. *Bumstead*, 99 *Mass.* 112; *Lane* v. *Moore*, 151 *Id.* 87; *Marx* v. *McGlynn*, 88 *N. Y.* 357; *Robinson* v. *Hutchinson*, 26 *Vt.* 38, and *Mooney* v. *Olsen*, 22 *Kan.* 69. I am unable to agree that these decisions support the conclusion of the principal case. They seem to me to be authorities in opposition to it rather than in support of it. In Shailer *v.* Bumstead, Justice Colt, on page 126 of the opinion, says: "Such evidence is not competent as a declaration or narrative to show the fact of fraud or undue influence at a previous period. But it is admissible not only to show retention or loss of memory, tenacity or vacillation of purpose existing at the date of the will, but also in proof of long-cherished purposes, settled convictions, deeply-rooted feelings, opinions, affections or prejudices or other intrinsic or enduring peculiarities of mind inconsistent with the dispositions made in the instrument attempted to be set up as the testatrix's will." In Lane *v.* Moore (at *p.* 90), Justice Allen, after referring to earlier Massachusetts cases in which declarations of the testator had been admitted, says: "The evidence is received merely for the purpose of throwing light upon the state of mind of the person at the time in question, and not as tending to establish the proof of any facts which may have been stated by him. There are certain proper limitations to the admissibility of such evidence. One is that the testimony should appear to have some natural bearing upon the mental condition of the person, or his intention at the particular time which is immediately involved in the issue."

In Marx *v.* McGlynn, Justice Earl (at *p.* 374) says that such declarations are in the nature of hearsay, and "are incompetent for the purpose of defeating or destroying the will or any of its provisions. They are competent only as bearing upon the condition of the mind of the testatrix at the time of the execution of the will. Such declarations are competent as bearing upon the testator's mental capacity. They are

also competent as bearing upon the condition of the testator's mind with reference to the objects of his bounty."

In *Robinson v. Hutchinson,* Justice Isham (at *p.* 47) expresses the conclusion reached by the court as to the admissibility of such declarations as follows: "The true rule and distinction on this subject we apprehend is given in 2 *Phil. Ev.* (in notes by Cowen & Hill) 648, in which the editor remarks 'that the difficulty seems to lie in acting upon the distinction between declarations going to develop the operations of the mind, and those containing the assertion merely of a distinct fact. The former are admissible, the latter not.'"

In *Mooney v. Olsen, supra,* the conclusion reached by the court is thus expressed by Mr. Justice Brewer on page 77 of the opinion: "While declarations are not admissible as mere impeachment of the validity of a will, they are admissible as evidence of the testator's state of mind. A man's words show his mental condition. It is common to prove insanity by the party's sayings as well as by his acts. One's likes and dislikes, fears and friendships, hopes and intentions, are shown by his utterances, so that it is generally true that whenever a party's state of mind is a subject of inquiry, his declarations are admissible as evidence thereof. In other words, a declaration which is sought as mere evidence of an external fact, and whose force depends upon its credit for truth, is always mere hearsay, if not made upon oath, but a declaration which is sought as evidence of what the declarant thought or felt, or his mental capacity, is of the best of evidence."

Turning now to the New Jersey decisions. An examination of them shows that there has been much vacillation of judicial view upon the admissibility of the declarations of a testator.

In the case of *Den v. Vancleve,* 2 *South.* 589, Justice Southard, on page 676 of the case, declared that antecedent declarations of the testator were competent to rebut a charge that the will was the result of fraud or imposition exercised upon him, saying "the allegation and proof were that testator was imposed on and did not speak his own will. Was it not a proper answer that he did what for twenty years he had in-

tended to do, and, therefore, there could be no imposition? And if this be a proper answer shall not the defendant be permitted to prove it, and can it be proved in a better way than by the testator's acts and declarations? I am aware of none." Chief Justice Kirkpatrick considered that the declarations were not competent for the purpose indicated, and Justice Rossell expressed no opinion upon the subject.

In *Day* v. *Day,* 2 *Gr. Ch.* 549, antecedent declarations of the deceased as to his testamentary intentions were received in evidence, and were considered by the Prerogative Court to support the conclusion that a paper offered for probate as his last will and testament was signed by him without being acquainted with its contents.

In *Boylan* v. *Meeker,* 2 *McCart.* 310, which was a controversy in the Prerogative Court over the probate of the will of Jonathan M. Meeker, and where the allegation of the caveators was that the paper offered for probate was not the genuine will of the deceased, it was held that it was competent for the caveators to show that the provisions of the contested will were contrary to the expressed intentions, views and feelings of the deceased before the time at which it bore date.

In the later case of *Boylan* ads. *Meeker,* 4 *Dutcher* 274, which was an action in ejectment between the same parties, and where one of the questions in issue was whether or not the alleged will of Meeker was a forgery, Justice Whelpley, in delivering the leading opinion for the Supreme Court, expressly refused to follow its earlier decision in Den *v.* Vancleve, and after a review of many of the cases upon both sides of the question, concluded that "the decision of the case upon principle, and the great weight of authority, requires the rejection of evidence of the testator's declarations, whether made before or after the execution of a will, either to support or destroy its validity, when the declarations are offered as evidence of the facts declared, and not as showing soundness or unsoundness of mind." *Opinion, p.* 294.

The first case where this question was mooted in this court, so far as my examination of our decisions has disclosed, was the celebrated one of *Harris* v. *Vanderveer's Ex-*

*eculor,* 6 *C. E. Gr.* 561, decided ten years after Boylan *ads.* Meeker. One of the questions litigated in that case was whether the signature of Dr. Vanderveer to his will had been fraudulently procured without a full knowledge on his part of its contents. Both sides put in evidence declarations of the deceased showing his testamentary intentions. Those declarations were received without objection, and were considered, not only by the court below, but by this court, in reaching a conclusion upon the merits. Justice Van Syckel, who delivered the opinion of this court, was careful to guard against the conclusion that this court, by its action, affirmed the admissibility of such evidence by the following statement: "It is proper to say that it is not intended to intimate any opinion as to the admissibility of the testator's declarations before and after the execution of the will; they have been used in the argument on both sides without objection, each party claiming a benefit from them." This statement was undoubtedly called forth by the fact that the prior decisions of the Supreme Court and the Prerogative Court were not in harmony upon this question, and that this court was not willing to declare itself upon the one side of it, or the other, until appropriate occasion for doing so should arise.

In the case of *Rusling* v. *Rusling,* 9 *Stew. Eq.* 603, the question was again touched upon by this court. A caveat had been filed against the will of Gershom Rusling, deceased, upon the ground that it was the product of undue influence. The caveators offered to prove declarations of the testator respecting the conduct toward him of the favored legatees. The purpose of the offer was to prove *the facts* stated by the deceased. On the trial in the court of first instance, before the late Chief Justice Beasley and a jury, that distinguished jurist stated in his charge that the declarations were not competent for that purpose; that they were only competent for the purpose of showing the effect upon the testator of the exercise of the alleged power or dominion which the favored legatees were said to possess over him. Added weight is given to the Chief Justice's exposition of

the law by the fact that he presided in this court when
Harris v. Vanderveer's Executor was decided.   Chancellor
Runyon, when the case came into the Prerogative Court for
review, thus dealt with the question: "That charge (i. e.,
the charge of the Chief Justice to the jury) was in accord-
ance with the settled law on the subject in this state, although
it has never been so declared, indeed, by the court of last
resort." See his opinion, 8 Stew. Eq. 129. When the case
came into this court Justice Dixon, delivering the unani-
mous opinion of the court, thus deals with the question (at
p. 607) : "These declarations are not admissible as evidence
of the facts which they were offered to prove. When undue
influence is set up in impeachment of a will the ground of
invalidity to be established is, that the conduct of others has
so operated upon the testator's mind as to constrain him to
execute an instrument to which, of his free will, he would
not have assented.   This involves two things—first, the con-
duct of those by whom the influence is said to have been ex-
erted; second, the mental state of the testator, as produced
by such conduct, which may require a disclosure of the
strength of mind of the decedent and his testamentary pur-
poses both immediately before the conduct complained of
and while subjected to its influence.   In order to show the
testator's mental state at any given time, his declarations at
that time are competent, because the conditions of the mind
are revealed to us only by its external manifestations, of
which speech is one.   Likewise the state of the mind at one
time is competent evidence of its state at other times not
too remote, because mental conditions have some degree of
permanency.   Hence in an inquiry respecting the testator's
state of mind, before or pending the exertion of the alleged
influence, his words, as well as his other behavior, may be
shown for the purpose of bringing into view the mental con-
dition which produced them, and, through that, the ante-
cedent and subsequent conditions.   To this extent his decla-
rations have legal value.   But for the purpose of proving
matters not related to his existing mental state, the asser-
tions of the testator are mere hearsay.   *   *   *   There is

no legal principle upon which they can be treated as evidence *of acts* constituting undue influence. The weight of authority touching this matter is in accordance with true principle, but it is not necessary here to review the cases. In *Boylan* ads. *Meeker,* 4 *Dutcher* 274, Justice Whelpley refers to many of them, examining the point with much care; and more recently, in *Shailer* v. *Bumstead,* 99 *Mass.* 112, Justice Colt has discussed the subject with great clearness of discrimination, the conclusions in both opinions being that at which we have arrived." From a cursory reading of the concluding portion of this extract it might be thought that this court concurred completely in the views expressed by Justice Whelpley in the Boylan *ads.* Meeker case. But this is clearly not so. The only question for determination in the Rusling case was whether the declarations of a testator were evidential of the facts referred to in them. The conclusion reached was that they were not. This conclusion is identical with that reached both in Boylan *ads.* Meeker and in Shailer *v.* Bumstead. The question whether such declarations were admissible to show the state of mind of a testator —his testatmentary intentions—was not before the court, and what was said by Justice Dixon upon that point, as well as what was said by Chief Justice Beasley and Chancellor Runyon in the earlier stages of the case, was purely *obiter*. That Justice Dixon's view upon that point was no part of the conclusion which he declared was the same as that expressed in Boylan *ads.* Meeker and Shailer *v.* Bumstead is apparent, not only from the fact that those two cases are absolutely opposed to one another upon this question, as the above-cited extracts from the opinions in those cases show, but also from the further fact that the conclusion in the Boylan *ads.* Meeker case upon this point is opposed to his own *obiter* expressions in the case he was considering.

In *Gordon's case,* 5 *Dick. Ch. Rep.* 397, 424, declarations of the testator "which made for or against the authenticity of the disputed will" were held by Chancellor McGill, sitting as Ordinary, to be incompetent, on the authority of Boylan *ads.* Meeker and Rusling *v.* Rusling. The purpose

for which the declarations were offered is not stated in the opinion of the court. It is impossible, therefore, to determine whether the case is an authority against the admissibility of the declarations of the testator for the purpose of proving his intention at the time they were made, with relation to the making or not making a testamentary disposition of his property. It is also to be observed that the decree of the Prerogative Court was affirmed, when the case came into this court, without any expression of opinion on the subject of the propriety of excluding these declarations. *Gordon* v. *Old,* 7 *Dick. Ch. Rep.* 317.

In *Davis* v. *Elliott,* 10 *Dick. Ch. Rep.* 473, Chancellor McGill, sitting in the Prerogative Court, took into consideration declarations of the testatrix showing her testatmentary intentions with relation to the caveator in determining the question whether the alleged will was a forgery. This decision, rendered five years after that promulgated by him in the Gordon case, would seem to justify the inference that the later case was not considered by him to be in conflict with the earlier one, and that the rejected declarations in the Gordon case were not offered to prove the state of mind of the testator, but for the same purpose which led to their rejection in the Rusling case, viz., as evidence of the facts declared.

From this *résumé* of the New Jersey cases it appears that the Prerogative Court, from its decision in Day *v.* Day in the year 1831 down to that in Davis *v.* Elliott in 1897, has consistently held to the view (with the possible exception of the Gordon case) that antecedent declarations of the testator are competent for the purpose of showing that the provisions of a contested will are contrary to or in harmony with his intentions, views and feelings as exhibited by those declarations; that the Supreme Court at one time held the same view, but subsequently repudiated it, and held that such declarations were competent only for the purpose of showing mental capacity or lack of it in the testator, and that this court has not until this time been called upon definitely to decide the question, but has *obiter* expressed the view that such declarations are competent for the purpose of

showing the state of mind of the testator when his state of mind at the time of making the declarations is germane to the issue being tried.

The present case now requires us to declare our conclusion upon this question, and it is this: That the true rule is that stated by Professor Wigmore in his very able treatise on the *Law of Evidence,* § 1735, viz., that where the issue is whether a will was executed, or whether a will was made to have a certain tenor or provision, the pre-existing testamentary design of the alleged testator is always relevant, and to evidence the existence of that design his antecedent statements are admissible when not too remote to be material.

The excluded declarations of Mr. Russell tending to show his testamentary design are those referred to in the opinion of the Supreme Court as being made the subject of the seventeenth and eighteenth assignments of error in that court and those contained in the proffered testimony of Elisha Doremus. These declarations were not rejected as too remote in point of time, but solely upon the ground that they were hearsay. Under the rule which we have declared they were not objectionable upon that ground, and should have been admitted, unless it had been made to appear that they were so remote as to be immaterial upon the issue whether the paper-writing dated thirteen days before the death of Mr. Russell was, in fact, his last will and testament, or whether it was a forgery. Their exclusion, was, we think, harmful error.

It is proper that we should say before closing that, in the state of our decisions as they existed at the time when this case was tried, the trial court was not only justified in following the decision of the Supreme Court in Boylan *ads.* Meeker, but was under a legal obligation to do so, and that the Supreme Court itself was also required to pursue the same course unless it considered that decision to be manifestly unsound.

The exclusion of the declarations of the testator makes it necessary to reverse the judgment under review and to order a new trial.

*For affirmance*—THE CHANCELLOR. 1.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ. 12.