103 P.2d 631

**In re ROEDER'S ESTATE.**

**No. 4505.**

Supreme Court of New Mexico.

June 11, 1940.

Coors & Adams, of Albuquerque, for appellants.

Rodey & Dickason and Wm. A. Sloan, all of Albuquerque, for appellees.

BICKLEY, Chief Justice.

Contestees, appellants here, filed for probate an instrument purporting to be the last will and testament of H. B. Roeder in the Probate Court of Bernalillo County. Appellees opposed probate of the purported will upon the contention that the first page thereof had been substituted for an original first page without the essentials of signing and witnessing as required by § 154-105, N.M.S.A., 1929 Comp. The Probate Court admitted the instrument to probate. After appeal to the district court, the latter found, as evidence of a possible substitution of a different first page, that pages two and three of the purported will (Contestee's Exhibit A) had at some previous time been stapled together, but that page one thereof was not previously stapled together with pages two and three. There was also admitted in evidence, over objection, an instrument (Contestant's Exhibit A–1), which appellees sought to prove was a copy of a page that constituted page one of the instrument executed on July 7, 1937. Appellees offered in evidence another instrument (Contestant's Exhibit A–2) which appears to be a copy of *some* will found among the papers of the decedent. Pages two and three of this copy are identical with pages two and three of the instrument offered for probate. When page one of the copy known as Exhibit A–1 is placed in position with pages two and three of Contestants' Exhibit A–2, it clearly appears that pages two and three were at one time stapled together with this page one, leading to the conclusion that so far as the copy is concerned, the three pages were originally stapled together, but that a new page was later substituted as page one. To corroborate that Contestants' Exhibit A–1 is a copy of what was originally page one of the will, appellees put on the stand a number of witnesses who testified to statements made by the deceased both before and after July 7, 1937.

This testimony was objected to as hearsay and as being immaterial. The court overruled the objection, admitted the testimony, and at the conclusion of the case rendered judgment denying probate of the instrument. Reversal of the district court is sought upon two grounds: (1) that the court erred in admitting evidence of declarations and statements of the deceased to corroborate the existing physical evidence tending to show that a will made and executed by deceased on July 7, 1937, had been later changed by him, and (2) that appellees failed to show by their evidence that they have a sufficient interest in the subject matter of the proceeding to entitle them to oppose probate on the grounds that appellants are mentioned in neither Contestees' Exhibit A, nor in Contestants' Exhibit A–1, and the only evidence introduced at the trial with reference to their interest in the subject matter is testimony of Pearce C. Rodey that John Roeder was a brother of deceased and Mrs. A. E. Post was his sister, and a reference to the "Affidavit of Custody of Will" (Tr. 1–2) in which E. C. Iden, as executor named in the will, included the appellants upon information and belief, among the heirs and beneficiaries.

The first and leading question presented to this court for determination is, as counsel has pointed out, one of first impression in this court; whether hearsay testimony is admissible in evidence as to declarations of the decedent to corroborate physical evidence of a change in the terms of the testator's will. It is conceded by contestants that the evidence in question is hearsay, being in the nature of extrajudicial statements offered to prove the truth of the matter asserted therein. Admittance in evidence under the established rules relating to hearsay testimony must, therefore, be gained through some exception to the hearsay rule. Appellants point out that the two bases which underlie all exceptions to the hearsay rule are "necessity" and "circumstantial guarantee of trustworthiness". If, then, this hearsay testimony was properly admitted, it must be supported either because of "necessity" or "circumstantial guarantee of trustworthiness", or both. It is upon the issue of whether these tests are met that counsel differ. Appellees feel that the "necessity" does exist because the declarant himself is dead and unable to testify. This is questioned by appellants who point out that there are many situations in which similar "necessity" exists, as in cases of dying declarations in non-homicide cases and self-serving declarations of persons since deceased or otherwise unavailable to testify, where the declarations are not admitted.

The basic conception of the hearsay rule is that it should go to the admissibility of the evidence as the general rule. By talk and rehashing, facts quickly become grossly distorted. The law, by means of the hearsay rule, guards against this weakness of humanity by permitting no second-hand talk to be entered as evidence, with certain exceptions responding to the bases already noted. Some of these exceptions have become very clear and well recog-

nized, others are more obscure and are allowed by some courts, while denied by others. The case at bar falls under none of the clearly defined exceptions. Admission, therefore, if at all, must be based upon one of the more controversial exceptions as judged from the necessity and trustworthiness angles.

The evidence in question was not offered to impeach terms of the will or as evidence of what the terms of a will are. To hold thus would assume the very facts in issue; i. e., whether this instrument is or is not a will. The evidence was not offered as a substitute for attestation, but rather to show that there was in fact not a proper signing and witnessing of the first page of this proffered instrument and that, therefore, what was offered as a will was not in fact such an instrument. Hence, violation of the statute requiring proper attestation and signing by admitting the testimony is not involved.

The situation is closely analogous if not the same as will contests on grounds of forgery in which the evidence is offered to show that what is sought to be probated as a testator's will is in fact not his will, since forgery may consist in altering an existing instrument. Declarations of the testator as to his intentions in such cases have been held admissible for the purpose of corroboration to show the improbability that the testator would have drafted such an instrument. So, whenever the issue is whether the testator signed a particular will which is offered for probate, the pre-existing testamentary design is relevant and may be shown in evidence. State v. Ready, 78 N.J.L. 599, 75 A. 564, 28 L.R.A., N.S., 240. We further quote approvingly the following language from Ellis v. O'Neal, 175 Ga. 652, 165 S.E. 751, 754: "It must be true that parol evidence is admissible to show by statements of the testator that the paper sought to be propounded is not the same as that which was attested by the witnesses. * * * it is clear that statements of the testator, either before the execution of a purported will, at the time of execution, or after the execution of a paper, are admissible to aid in the determination of the fact whether the paper offered for probate is really the writing which was attested by witnesses as required by law."

That there is conflict in the authorities as to the admissibility of these declarations under the hearsay rule is apparent. This is conceded by appellants. We will not attempt to review the decisions. Those wishing to make such a review will find annotations in 62 A.L.R., page 698, and 119 A.L.R., page 1366, on the subject "Admissibility of Testator's Declarations Upon Issue of Genuineness or Due Execution of Purported Will". It is therein asserted that the weight and trend of authority are in favor of admitting declarations of an alleged testator on the issue of forgery where the issue is raised by other substantial evidence, and proof of the declarations is therefore corroborative of other testimony. It should be borne in mind in appraising the authorities that forgery may consist in altering an existing instrument.

26 C.J. 901. The annotator, in the subdivision treating of the decisions declaring that such declarations are inadmissible, states that many of these are to be explained on the ground that the other evidence did not substantially raise the issue of the genuineness of the will. We cite only a few decisions, texts and reasons in support of the desirability of the result we here reach.

 "Necessity", as we understand its significance in relation to the exceptions to the hearsay rule, is not necessarily predicated upon the fact that there is no other evidence available from any source to prove the point in question, but rather that a necessity exists because the particular information in question is not obtainable in a more purified or authentic form from the same source. It is, under this principle, better to hear what the declarant said extra-judicially than to lose the benefit of the information he possessed, permitting the fact that these statements were uttered extra-judicially to go to their credibility rather than to their admissibility. 3 Wigmore on Evidence, p. 155, Sec. 1421; p. 167, Sec. 1436, (2d Ed.).

We quote in this connection from an early and leading Georgia case: "It is said that the reasons for not hearing parol proof is, that there is not the ordinary security that it is true. This goes to the weight of the evidence. It is true, there are many cases in which it would be entitled to but little weight; nay, but a few in which it would be entitled to any. Yet, if there be others, in which it would sub-serve the cause of truth and justice, it must be heard, leaving its effect to those whose province it is to weigh it. I think there is little danger in this, when the Court can aid the jury in pointing out its legitimate tendency." Patterson v. Hickey, 32 Ga. 156, 164.

This reasoning is the more impelling in the case at bar when it is observed that it was not heard before a jury, but by the trial judge who is the better able to evaluate the weight that he should give, under the circumstances, to the extra-judicial declarations.

 The two principles of necessity and trustworthiness are not applied with equal strictness in every exception to the hearsay rule and in one or two instances one of them is practically lacking. 3 Wigmore on Evidence, Sec. 1423. In the present case the "necessity" principle is quite clear. It has been said, on the other hand, that some circumstances under which a testator makes his declarations are such as to make them particularly untrustworthy. While the testator's declarations are not, according to the strict interpretation of the conventional rule, to be regarded as declarations against interest (see Hosford v. Rowe, 41 Minn. 245, 247, 42 N.W. 1018), the testator by his declarations here at least limited the objects of his bounty, specifically even excluding some who might otherwise have expected to be included. He thereby lessened the possibility of receiving favor from these parties. See, for instance, Patterson v. Hickey, 32 Ga. 156, 157.

Wigmore, in treating the general subject of statements by deceased persons, says: "The needless obstruction to investigation of truth caused by the Hearsay rule is due mainly to the inflexibility of its exceptions and to the rigidly technical construction of those exceptions by the Courts. . . . The next and needed step in the liberalization of the Rule is the adoption of the general exception for all statements of deceased persons; leaving the application of the rule to the trial Court. This general exception, once foreshadowed a century ago (post, Sec. 1576), has in modern times been introduced in a few states, and should receive universal recognition." 3 Wigmore on Evidence, Sec. 1427, 2d Ed.

In an article on "The Rule of Hearsay in a Rational Scheme of Evidence" in Illinois Law Review, March, 1940, Professor James says: "But it (hearsay) should not be excluded *merely because it is hearsay* except where the party offering it could by reasonable effort and without depending on sources controlled by the opposite party have offered instead the declarant as a witness in his proper person."

Of course, declarations of deceased persons come well within this exception.

Confirming the trend toward greater admissibility of statements of this nature, we quote from Corpus Juris: "While the majority of the early cases is against the admissibility of the declarations, the modern tendency is to enlarge, rather than restrict, the matters as to which the declarations are admissible, *at least where the declarations are corroborative of other evidence.*" 68 C.J. 1004, Sec. 774. (Italics supplied)

Chiefly because it was decided this year and because of its succinctness, we employ a quotation from In re Williams' Estate, Tex.Civ.App., 135 S.W.2d 1078, 1082. "In Wood v. Wood, 241 Ky. 506, 44 S.W.2d 539, 540, the court of appeals of Kentucky said: 'Declarations of the alleged testator, before and after the supposed testamentary act, are competent in corroboration of other evidence of the main fact to which the declarations are addressed.'"

The evidence objected to in the case at bar is corroborative of the physical evidence of an alteration in the purported will.

The court in Ellis v. O'Neal, supra, likewise recognizes the modern trend toward a greater admissibility of the declarations here in question. We quote: "'Now the weight and trend of the authorities are in favor of the admissibility of declarations of an alleged testator, both those made before and those made after the date of the purported will, on the issue of forgery of the will, where the issue is raised by other substantial evidence, and proof of the declarations is corroborative of other testimony.' In support of this proposition, almost a page of authorities are cited."

Helpful, also, because of the similarity of the legally significant facts, is Patterson v. Hickey, supra, in which the original will involved was written on one whole sheet of paper. When it was offered for

probate it was in two pieces, bearing the appearance of having been cut and torn in two. This instrument after the death of the testator was found in a bureau drawer, separate from the testator's other papers, and in a place where he did not usually deposit his papers for safe-keeping. The caveators offered to prove declarations of the testator that he intended that his children and grandchildren should share his property equally. They were offered for the purpose of showing that the will, which made a different disposition of the property, had been revoked. The testimony was admitted for this purpose.

■ Of similar import is the following statement by the Kentucky court: "* * * no reason is perceived why declarations of an intention to revoke, followed by the act, as well as declarations subsequent to the act that the act had been performed, are not admissible in corroboration of other evidence to show both the act by the testator and the intent with which it was done. Indeed such is the prevailing view on the question." Stuart v. McWhorter, 238 Ky. 82, 36 S.W.2d 842, 844 (and cases there cited).

We conclude that the evidence to be drawn from the physical facts in the case at bar is sufficient to raise the issue of the genuineness of the will and that the interests of truth and justice demand that we adopt the view that the testator's declarations were properly admitted.

We come now to appellants' second point. Was the contestants' showing of interest in the subject matter sufficient to permit the court to deny probate upon their opposition? Appellants claim the contestants have not shown a necessary interest because (1) the evidence fails to show that appellees are heirs of the decedent, and because (2) they have no interest in the estate even if they are heirs, since a refusal to probate the offered will would be tantamount to upholding the instrument as it was drawn and executed on July 7, 1937, and being mentioned in neither will, (applying the doctrine of pendent relative revocation), contestants could be interested only if Roeder had died intestate.

■ We assume that the admission of a will to probate may be opposed or contested by, and only by, a person having some interest in the operation of the will, or the estate or its proceeds which will be affected and concluded by the probate of the proposed will. In reviewing this point of appellants, it is well to consider the nature of the proceeding authorized by Sec. 154-208, N.M.S.A.1929. We think it is very well described in Hutson v. Sawyer, 104 N.C. 1, 10 S.E. 85, as quoted in the note to Standard Ency. of Procedure, Vol. 26, page 181, Wills:

"(b) '*The proceeding is not like an ordinary action or special proceeding* to which, regularly, there are parties plaintiff and defendant; nor is the purpose of it to litigate a cause of action which the plaintiff may abandon or withdraw from the court by suffering a judgment of nonsuit, or otherwise. It is a proceeding in rem, to which strictly there are no parties. The

court in the way prescribed by statute, takes jurisdiction of the paper writing or script propounded for probate as the will of the alleged testator. The jurisdiction is in rem, and the chief purpose is not to settle and administer the rights of the parties claiming under or against the alleged will, but to ascertain whether the supposed testator died testate or intestate; and, if he died testate, whether or not the script propounded, or any part of it, be his will. When the issue devisavit vel non is raised, the court desires to have all persons interested before it to see proceedings. When they are cited they come into court, and may stand passively, or take active part on either side of the contest, according as they may be interested in favor of, or adversely to, the script propounded as the will. And any party thus before the court may withdraw from the proceeding, paying such costs as he may properly be chargeable with; but, in that case, the script is left with the court to be proven or disposed of according to law. In the very nature of the matter, a party before the court does not sustain such relation to the proceeding as to give him control of it or the subject matter of the issue. He is there to see proceedings, and take active part, if he will, in an inquiry as to a matter — the script — of which the court has control, and which it is its duty to settle and determine. The purpose is to determine the nature of the script, for the benefit of all whom it may concern, and not specially for that of any particular person, whether he be before the court or not. The proceedings — the script, the issue — are not of the persons before the court. They cannot control or direct the same as parties; that is the sole province of the court, as to the issue. They are not parties and hence, whether they take part on one side or the other of it, they cannot take or suffer a judgment of non-suit; nor can they dismiss the proceeding.' Hutson v. Sawyer, 104 N.C. 1, 10 S.E. 85."

Undoubtedly this proceeding is less formal than the proceeding authorized for contest of a will after probate. See Sec. 154-211; N.M.S.A.1929. "Even where a hearing and opposition is contemplated the proceeding is as simple as possible." Borland on Wills, Sec. 61.

█ It consists in producing the will itself to the court accompanied by such other evidence as may be required. The probate court is authorized to probate wills by receiving the evidence of the witnesses who were present at the time of making the same, "and all other facts in relation to the investigation of the validity thereof." Sec. 154-202.

"The only issue that can be tried is devisavit vel non. It is proper for the probate court to go into just as thorough an investigation as it chooses in regard to this one issue—whether the writing produced is the will of the testator." Borland on Wills, Sec. 62.

"The probate court, in considering a petition for the allowance of a will, may well hear any one who claims an interest, and

who seems to be in a position to throw light upon the questions under consideration. It may, in its discretion, hear a person as amicus curiæ, or seek infomation in any other proper way at the hearing." Pattee v. Stetson, 170 Mass. 93, 48 N.E. 1022, 1023.

Sec. 154-203 of our Code provides that after the will is produced and read the Probate Judge shall ascertain from the will "and by the affidavit of the person producing the same and any other satisfactory evidence that may be obtained, the names * * * of the widow or husband or heirs-at-law, of the decedent," etc.

Sec. 154-204 provides, in effect, that notice shall be given to the persons named in the affidavit and the will, etc., as heirs-at-law and others interested in the proceedings.

The record shows that the affidavit of E. C. Iden was filed in the probate court on February 14, 1938, setting forth that he had custody of what purports to be the will of H. B. Roeder, deceased, and

"that according to the best information and belief of affiant, the names and addresses of all of the heirs and beneficiaries of deceased under said will are * * * Mrs. A. E. Post, sister, 5412 Thomas St., Chicago, Illinois.

"Mr. John Roeder, brother, Box 938, Kilgore, Texas. * * *

"Wherefore, affiant and Messrs. Reid & Iden, Attorneys for said Estate, move the Court for an order setting a day for the proving of said alleged Last will and Testament. * * *"

Others are named in the affidavit, but none of them are designated as the widow, children or mother and father of the deceased Roeder.

This affidavit and petition was filed in the office of the clerk of the probate court February 14, 1938. There is no written traverse of it. On March 26, 1938, appellees filed in the probate court a paper designated "Petition Contesting Probate of Alleged Last Will and Testament". In paragraph 1 thereof, appellees allege that they are brother and sister of the decedent and heirs-at-law of said decedent, the decedent having died without issue. The record does not disclose any written pleading in the probate court traversing these allegations.

On March 28, 1938, a hearing was had in the probate court being the time noticed therefor, at which time the probate court made an order proving the will, in which it is recited that the court had under consideration the petition of contestants theretofore filed by Anna Roeder Post and John Roeder. The record does not disclose that any issue was made in the Probate Court of the interest of contestants in the operation of the will or the validity thereof. On May 9, 1938, there was filed in the Probate Court a motion praying an appeal to the district court, and that the clerk of the Probate Court be directed to transmit to the district court a number of papers including the alleged will and "the peti-

tion for probate". This last-mentioned paper is manifestly the affidavit and petition of Mr. Iden heretofore referred to.

The appeal was apparently perfected on May 10, 1938, by filing in the district court the papers called for in said motion for appeal. On May 4, 1939, the district court heard the matter de novo and on May 5th entered his findings of fact and conclusions of law, and on May 13th, 1939, there was entered an "Order on Appeal From Probate Court". This order recites the appearance of contestants and contestees by their attorneys and that "all parties interested thus appearing in person or by counsel." The order further recites that the court examined the exhibits and heard the testimony of witnesses and the arguments of counsel, and does "find that the said instrument was not signed and executed in the manner and form required by law, and that said instrument was not the last will and testament of Henry B. Roeder, deceased * * * that the instrument offered for probate as the last will and testament of Henry B. Roeder, deceased, be, and the same hereby is, denied probate, and the Probate Court is hereby ordered to set aside and annul its previous order admitting said instrument to probate, to which ruling of the court the contestees duly object and except;". As heretofore stated, prior to the making of the order, there was filed "Findings of Fact and Opinion of the Court". These findings of fact are all directed to the merits of the controversy and it is not disclosed that any specific findings were re-

quested by contestees. Nowhere in the proceedings is there any challenge to the court's findings and conclusion on account of a failure to find that contestants had no interest to maintain in the controversy and no finding is requested by the contestee to this effect. There was no motion to dismiss the appeal from the probate court to the district court.

In Vol. 26, Standard Ency. of Procedure, Wills, page 215, it is said: "A motion to dismiss is a proper method in some jurisdictions to question the interest of the objector. This issue is a preliminary one which may and should be determined before proceedings to try the other issues."

In 16 Ency., Pl. and Pr., "Probate and Contest of Wills", it is said at page 1016: "Where the contestant's interest is disputed the question of law or fact is usually decided before proceeding to trial of issues on the merits."

This would seem to be the proper practice, and it is not necessary to multiply citations because appellants, in their brief, conceded: "As a general rule the issue as to interest of the objector is a 'preliminary one which may and should be determined before proceedings to try the other issues.'"

So far as the record shows, the first written pleading filed by the contestees was a paper filed in the district court (June 17, 1938) entitled "Answer to Petition Contesting Probate of Alleged Last Will and Testament".

In this paper some of the appellants made common cause with Mr. Iden, the executor of the estate of H. B. Roeder, deceased.

In the order allowing the appeal to this court and the notice of such appeal, the appellants (contestees) are characterized as "proponents" of the instrument offered as a will.

We have expressed doubts as to whether the appellants have adequately and in a timely manner raised the question of sufficiency of showing by appellees (contestants) of their interest in the controversy. If raised at all, it is at the conclusion of the hearing after the court had announced its decision on the merits and prior to the making of findings and conclusion by the district court. It seems necessary for a proper appraisal to quote as follows:

"Mr. Adams: The minors, the two Hudgins children, and Mary Elizabeth Roeder, by their Guardian ad Litem, call to the attention of the Court at this time, that the Contestants herein have failed to show an interest in the subject matter of the case, entitling them to contest the probate of the instrument which has been submitted as the purported will of Henry Roeder, deceased.

"The Court: In order for the Court to rule, it would first have to hold that there was another will. I don't think that is before the Court. I have nothing before me except whether or not Contestees' Exhibit A should be admitted to probate.

"Mr. Adams: I think Contestants should show that they have an interest in the subject matter, entitling them to contest this purported will, and I believe they fail to show that.

"Mr. Rodey: We represent the brother and sister, and I believe they gave you notice as such.

"The Court: Are his brother and sister here?

"Mr. Rodey: They are here by us. I don't think that point is before the Court, and as attorneys, we are to represent them. I will take the stand and swear I know they are brother and sister, because they were here for the funeral.

"Mr. MacPherson: I would like to have the record show that on behalf of Mary K. Cissel, a minor, I make the same motion that Mr. Adams made on behalf of the parties he represents.

"The Court: I am thoroughly satisfied in my own mind that this instrument is not entitled to probate. The evidence is sufficiently clear. (To Mr. Adams): Are you contending seriously on the point that they haven't established that the Contestants are brother and sister—

"Mr. Rodey: I will testify to that fact. I knew this brother.

"Mr. Adams: I object to the attorney testifying.

"The Court: Objection overruled. We are trying to decide this case on the facts.

"Pearce C. Rodey

"Having first been duly sworn, testified as follows:

"Mr. Rodey: I think they have admitted it by their petition for probate. They say: 'That according to the information and be-

lief of Affiant, the names and addresses of all of the heirs and beneficiaries of deceased under said will are: George G. Roeder, brother, Box 938, Kilgore, Texas., and Mrs. A. E. Post, sister, 5412 Thomas St., Chicago, Illinois.' They have set it forth in their petition, and sent us notice that way.

"The Court: I think that is sufficient.

"Mr. Rodey: I also state that I am an attorney, practicing at the bar,—Pearce C. Rodey,—and that Mr. John Roeder, brother of the decedent, came personally to our office, and I think that he also went to Mr. Iden's office. I guess it was Mr. George Roeder.

"Mr. Iden: Yes, he is the father of the niece.

"Mr. Rodey: And that Mr. John Roeder was a brother of the decedent, and that we were employed by Mrs. A. E. Post, sister of the decedent, as contestants here.

"The Court: I think that is sufficient."

It seems clear that the court understood counsel's objection as going to lack of showing that contestants were brother and sister of the deceased Roeder. There was no disclosure to the trial court of the contention made that there was a lack of evidence to show that deceased left no issue and that he left no father or mother surviving him. It is apparent that the appellees relied on the affidavit and petition of Mr. Iden which they called the "Petition for Probate". This was the only petition for probate there was, and as we have

said, the appellants made common cause with Mr. Iden as proponents of the alleged will.

We think this petition for probate, with its statement of heirship and which the trial court considered without specific objection as "sufficient", was a paper in the case which the trial court was authorized to consider. Such a paper is referred to in Little Sisters of the Poor et al. v. Cushing, 62 Md. 416, as "the foundation of the petitioner's right to institute the proceeding". It was appellants' paper by adoption, in the sense that it is the only written petition for probate of the will. In fact, it is the only evidence in the case, except the alleged will itself, to show the proponents' (appellants') right to maintain the proceeding. True, the question of the interest of the proponents in the controversy was not made an issue. We mention this merely because the indications are that until the conclusion of the hearing everyone seemed to assume that all the persons named in the affidavit or "foundation" paper were properly before the court. On the issue of whether the writing produced was the will of testator, the proponents had the burden. On the issue of interest of the contestants or objectors in the proceedings, the burden was upon such contestants. If the court relied upon this foundation paper as "sufficient" to discharge this burden in the absence of countervailing evidence, we find no reversible error in his so doing. The affidavit has the sanction of the statute (Sec. 154-203). In fact, the language of the statute seems to charac-

terize it as "evidence", since it is said that the court may proceed upon it and "other satisfactory evidence". In answer to the suggestion that this affidavit or "petition for probate", as appellees term it, had spent its force and purpose when the day for the hearing is set forth and notice given, it may be said that this may be so ordinarily, but when the contestants appeal from the order of the probate court proving the will called for it in their motion for appeal, and it got into the trial court as one of the papers in the case in the trial de novo without objection, and it was there relied upon as contestees' petition for probate of the alleged will, and the court regarded it as evidence "sufficient" to overcome contestees' suggestion of lack of showing of interest in contestants without specific objection made by contestees to the court so considering it, we think it sufficient to make a prima facie case in view of the other considerations we have mentioned.

Furthermore, the proponents of the alleged will ought not to be heard to say that the very persons they noticed into court as parties in interest have no interest, particularly when the proceedings show that until the eleventh hour they were treated as litigants having an interest. See 3 C.J., Appeal & Error, Sections 486, 483; 4 C.J., Appeal & Error, Sec. 2398, Note 71.

From all of the foregoing, it appears that the appellants' first contention under their second assignment of error must be ruled against them.

We come now to appellants' second contention on the issue that contestants do not have sufficient interest. They say that if heirship is established, rejection of contestees' offered will would, under the doctrine of dependent relative revocation, retain in full force and effect the will in its original form. Since, however, the matter of the establishment of the will in its purported original form is not necessary to the determination of this case, its validity will not be here collaterally determined. Leaving out of consideration the will as it was purported to have been originally drawn, contestants were vitally interested in having the offered will defeated because in so doing they would as to that instrument establish an intestacy under which their interest as heirs of the decedent makes them competent caveators. Whether contestants are bound by their evidence offered in this case tending to establish a prior validly executed will in future contest proceedings against such a will is not before us.

For the reasons stated, the judgment of the district court should be affirmed, and it is so ordered.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.