311 P.2d 385

Matter of the Last WILL and Testament of Nathan B. STERN, also known as N. B. Stern, Deceased.

Rose POWELL, Regina Brandt, Selma Dreyfus, Mildred Goldman, Isadore Blum, Belle Friedman and Marian Noerdinger, Protestants and Appellants,

v.

Carl H. GILBERT, Morey Goodman and Dr. Anita S. Friedman, Proponents and Appellees.

No. 6104.

Supreme Court of New Mexico.

May 14, 1957.

J. H. Burttram, Santa Fe, David E. Grant, New York City, N. Y., for appellants.

Gilbert, White & Gilbert, Catron & Catron, Santa Fe, for appellees.

Robert E. Fox, Santa Fe, for beneficiaries, Lela A. Baker and Edward H. Oakley.

KIKER, Justice.

On January 25, 1955, there was filed in the office of the County Clerk of Santa Fe County a petition for the probate of instruments purporting to be the last will and testament and codicils thereto of Nathan B. Stern, deceased.

Protest to the probate of the will and codicils was filed by the appellants herein. The will, with codicils, was approved. Protestants then appealed to the district court.

In the district court proponents filed a motion to dismiss the appeal. The motion was sustained and the case is here upon an appeal by protestants from the order dismissing the appeal and returning the case to the probate court for further proceedings.

On the date fixed for hearing in the probate court the protest of appellants here was before the probate judge. No testimony was taken except that of the witnesses in support of the will and codicils. The order admitting the will to probate expressly overruled the objection made by the protestants. The appeal to the district court followed.

After the matter was on file in the district court, protestants filed an amended protest. Protestants also moved for discovery and inspection of certain instruments alleged to be in the possession of the proponents of the will or of their attorneys. While that motion was pending, proponents filed a motion to dismiss the protest and the appeal from the order of the probate court. This motion was sustained and from the order of dismissal this appeal was taken.

The petition for probate of the will declared that one of protestants is an aunt and the others are cousins of decedent.

The amended protest to the admission to probate of the purported will and two codicils charged that these instruments, which gave to Anita S. Friedman fifty-five per cent and to Murray M. Friedman, her husband, twenty per cent of the property of all kinds left by the testator at the time of his death, were procured by fraud and undue influence practiced upon decedent by Anita S. Friedman and Murray M. Friedman and some other person or persons to protestants unknown. It was alleged that Nathan B. Stern in his lifetime was the patient of Dr. Anita S. Friedman and Dr. Murray M. Friedman and that he reposed complete trust and confidence in the Friedmans as his doctors and became entirely dependent on them for the care and attention which he needed because of

his illness. It is charged that the Friedmans resorted to such coercion as was a distraint of decedent's free agency thereby forcing testator to act against his free will. It is alleged that by reason of their undeniably close association with decedent and of attentions given him, the Friedmans had obtained as loans approximately $250,000 prior to his death; that while so obtaining that money, the Friedmans had no independent means of repaying the loans which were forgiven by the will in question; that the Friedmans built a home upon land owned by decedent and furnished it lavishly with money obtained from decedent; that Nathan B. Stern became obligated to the amount of approximately $35,000 by reason of the purchase of equipment for the use of Friedmans; and that prior to the beginning of the doctor-patient relationship Anita S. Friedman had only a limited and mediocre wardrobe but she became possessed during decedent's lifetime of diamonds, jewels, furs and an elaborate wardrobe consisting of many expensive clothes all at the expense of decedent. Protestants further charge that the groceries, household and personal bills of the Friedmans were provided by decedent who, it is asserted, also purchased automobiles for them.

There are many other allegations in the amended protest similar to and some even more critical of the Friedmans than those mentioned above. The charges made are of such nature that upon submission of any substantial evidence to support them in case of a jury trial, they would require submissions of the case to the jury.

The proponents filed a declaration of waiver of jury trial but the protestants, within the time allowed, filed a demand for trial by jury in district court. The motion of proponents for dismissal of the protest claims as its basis affidavits attached to the motion and answer to interrogatories submitted to several different persons. The effect of the affidavits and answer to interrogatories in part supports the testimony of the witnesses to the will and in part supports the regularity in the execution of five earlier wills made by decedent. This will and the affidavits relating thereto were attached to the motion which was sustained by the lower court.

The protestants assert several points for reversal of the order dismissing the contest, as the proceeding is referred to in the briefs. The first is:

"1. The right of an heir at law to contest an ancestor's will is a property right and that the order of dismissal deprived them of that right and that the order of dismissal deprived appellants in this case of the right without due process of law."

There can be no doubt that the protestants are heirs at law. Upon this fact the parties are in agreement. If, then, dece-

dent had died intestate they would have succeeded to an interest in his property, both real and personal; and considering the 1953 will and the codicils alone protestants have sufficient pecuniary interest in the property left by the decedent to give them the right to protest or contest.

Protestant had a right under § 30-2-9, 1953 Comp., to make objection to the probate of the will in the probate court and to appeal to the district court from the order of the probate court

The rights of appellants in the property of decedent vested at the minute of his death and but for a valid will, if any exists, otherwise disposing of the property they became owners in part at least of the property left by decedent.

In Re Morrow's Will, 41 N.M. 723, 73 P.2d 1360, 1364, Justice Brice quoted from the California case of In re Baker's Estate, 170 Cal. 578, 150 P. 989, 992, the following:

" '* * * Upon what is the right of an heir or other person in interest to contest a will fundamentally based? Manifestly, upon the illegal deprivation occasioned to him, the illegal loss to him of property or property rights, by giving recognition to an instrument depriving him of those rights, which instrument for one or another cause, is illegal, invalid and void. While the mere expectancy of an heir is not usually regarded as property, the moment the ancestor has died, that expectancy is changed into a vested interest in property. It becomes thus vested by virtue of the death. If, then, those rights are destroyed or impaired by an instrument which, though in form a will, is not for any reason recognized by the law a valid instrument, clearly the heir is being stripped of his vested rights to property by a paper writing as iniquitous as though it were forged as indeed it may be.' "

This Court having adopted with approval the language just quoted from the California case, it must be held, as we do hold, that appellants at the moment of the death of Mr. Stern had a vested interest in all of the property left by him subject to being defeated by proper probate of a valid will otherwise disposing of this property.

The purpose of a will contest must necessarily be to show the invalidity for some reason of a will offered for probate. If this purpose is accomplished, then we have a successful contest of a will which was defined in the Morrow Will case as follows:

"The effect of a successful will contest is to establish the contestant's right to property; for he must be pecuniarily interested (usually as an heir at law), so that when the will is

eliminated the laws of descent and distribution are effective to establish his title. Property rights are directly involved."

As to the proposition of law above briefly discussed there is in the Morrow Will case the citation of a large number of cases. It is unnecessary for us to here repeat and add to that number.

■ Appellant next urges that under the laws of this state and by the great weight of authority the rights of an heir to protest or contest an alleged will cannot be cut off merely because earlier purported wills of decedent which have not been probated make no provision for the heirs at law; and that the validity of such earlier wills could only be properly determined by their probate.

The fact in this case is that when the will offered for probate was attacked in probate court there was no other will before the court. The will and codicils offered for probate and no other writing made by testator were before the court. Appellees do not contend that there is any other real basis for the dismissal of the case than the existence of five purported earlier wills executed by Nathan B. Stern. Proof of the existence of each of these wills by affidavit as to the time, place and execution thereof supported the motion to dismiss the protest. In this connection appellees' position, it seems to us is that the former wills were improperly submitted to the trial court for consideration. The question before the trial court was whether the will offered for probate was void. There was no other question to be determined.

In such a situation as was before the trial court we think this Court has taken its position as to purported wills previously executed. In re Roeder's Estate, 44 N.M. 429, 103 P.2d 631, 639, an instrument purporting to be the last will and testament of H. V. Roeder was filed for probate. Appellees opposed the probate on the contention that the first page of the instrument had been substituted for the original first page without the essentials of signing and witnessing as required by statute. The instrument was admitted to probate. Appeal was taken to the district court where, upon a hearing, there was placed in evidence an exhibit called A–1 which, it was contended, was a copy of page one of the will as originally written.

Another instrument was found among the papers of decedent appearing to be a copy of a will. Pages two and three of the copy were identical with pages two and three of the instrument offered for probate. The page one above referred to, Exhibit A–1, when placed in position with pages two and three of the last mentioned copy of a will made it appear "that pages two and three were at one time stapled together with this page one, leading to the

conclusion that so far as the copy is concerned, the three pages were originally stapled together, but that a new page was later substituted as page one." Probate of the proffered will was denied and on appeal to this Court, the denial was affirmed. The court held as to the former will that proof of its validity was not necessary to determination of the case before it. We quote:

"Since, however, the matter of the establishment of the will in its purported original form is not necessary to the determination of this case, its validity will not be here collaterally determined. Leaving out of consideration the will as it was purported to have been originally drawn, contestants were vitally interested in having the offered will defeated because in so doing they would as to that instrument establish an intestacy under which their interest as heirs of the decedent makes them competent caveators."

This stands, we think, clearly for the proposition that the question to be determined when a will is offered for probate is its validity. It is also clear that whether the earlier wills were properly executed is a collateral matter in no way involved in proof of a will offered for probate.

The existence of former wills duly executed is not proof that a later will offered for probate was not executed under duress or undue influence. Though there are authorities to the contrary we think the weight of authority is to the effect that the existence of wills executed formerly but not probated cannot serve to defeat the contest of a will offered for probate. Many of the cases on both sides of the proposition are set out in the briefs of the parties. We refer only to some of the cases which are cited as supporting the proposition that wills that have not been admitted to probate are not substantial evidence on the question of the validity of a later will offered for probate.

In Marr v. Barnes, 126 Kan. 84, 267 P. 9, 10, the holding was that heirs at law could not be deprived of their right to contest a will merely because there were earlier wills made by testatrix which made no provision for them. The Kansas court said (referring to the effect of earlier unprobated wills):

"But the will of July was never probated. Until this is done, a will is merely 'a scrap of paper,' mayhap of some evidential significance—no more. A will neither confers rights on its named beneficiaries nor deprives heirs of their rights until it has passed the scrutiny of the probate court; and its presentation for probate and some action favorable or unfavorable thereon by that tribunal are prerequisites to a contest over its validity in a court of general juris-

diction. * * * We note that the industry of counsel has unearthed cases which apparently held that an heir who was disinherited by an earlier valid, unprobated will cannot maintain an action to contest a later will or codicil. How an unprobated will could be said to be a valid will and used in litigation as a valid will to the prejudice of an heir who has never had a chance to question its validity calls for a subtlety of reasoning which we would not care to follow."

In the case of Lonas v. Betts, 82 U.S. App.D.C. 55, 160 F.2d 281, 282, John H. Singer died and two wills executed by him were found; both were filed with the Register. The earlier left the entire estate to a church; the latter left it to appellants. After the later of the two wills was offered for probate Minnie Betts, a sister of decedent, instituted an action in the nature of a contest of that will. The standing of appellee, Minnie Betts, to prosecute the proceeding was questioned. By motion it was contended that if the later will should fail, she still would take nothing because the earlier of the two wills made no provision for her. This contention was overruled by the trial court and appeal resulted. The appellate court said, however, that in case the later will should fail, appellee would have a claim upon the estate as an heir and next of kin despite the earlier will and she might then become a contestant of the validity of the earlier will. In this regard, the court said:

"* * * We hold that an heir, claiming by intestacy, may caveat a probated will regardless of the possible effect of an earlier purported will which has not been proved or put in issue by anyone who claims under it. The cases from other jurisdictions on which appellants rely, so far as they are not distinguishable, seem to us erroneous.

"Our conclusion is supported if not required by the form of the District of Columbia statute: 'If, upon the hearing of the application to admit a will to probate, the court shall decree that the same be admitted to probate, any person in interest may file a caveat to said will and pray that the probate thereof may be revoked * . *.' If the will which has been probated should turn out to be invalid, and if thereafter the earlier will should be probated, this statute would expressly authorize appellee to attack the earlier will at that time. The law could not, with any consistency, require her to attack it now."

See, also, Stephens v. Brady, 209 Ga. 428, 432, 73 S.E.2d 182; Miller v. Munzer, Mo.App., 251 S.W.2d 966.

The argument of appellees seems to be that if the will offered for probate should be held invalid then one of the earlier wills would be effective to cut off appellants; and this being true, there can be no harm done by allowing the probate of the will in question, whether good or bad, to proceed. These wills were irrelevant and immaterial to the determination of the validity of the will offered for probate.

This line of reasoning we cannot follow. The will as an instrument by which property of a deceased person becomes that of another must be established in court after personal notice to all known heirs is given and after publication to all others who might have any interest in the property of deceased. Our statutes so provide. After notice is given of the time and place set for the hearing of proof of the will, testimony of witnesses to the will, or others, must be taken to show the validity of the signing of the will and other pertinent facts. The rights of examination of witnesses is the same in the probate court, which is a court of record, as it is in district court. In this case none of the five wills have been so established; the affidavits did not so establish any one or all of them.

Other propositions are submitted, but since we are holding that the validity of the prior wills was not a matter for consideration of the court in determining the validity of the last will executed by the testator, it is unnecessary to consider these propositions

Holding, as we do, that the prior wills were not of any support to the motion to dismiss made by appellees we must conclude that the motion should have been overruled.

It should also be said, we think, that when the motion to dismiss the protest was made there was before the court a motion filed by protestants which required the action of the court. This motion should have been considered and acted upon before entertaining any motion later filed.

From what has been said it follows that this case must be reversed and returned to the district court for further proceedings not inconsistent with this opinion.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, J., not participating.